[No. 19588.  Department One.—April 7, 1896.]

## In the Matter of the Estate of PILAR CALKINS, Deceased.  EDUARDO De La CUESTA, Respondent, v. J. W. CALKINS et al., Appellants.

APPEAL—JUDGMENT DENYING PROBATE OF WILL—DISMISSAL.—An appeal from a judgment denying probate to a will which is not taken until more than sixty days after its entry must be dismissed.

ID. — NEW TRIAL—DENIAL OF PROBATE—SERVICE OF NOTICE ON NONAPPEARING HEIRS.—An appeal from an order denying a new trial of a contest for the probate of a will, taken by the proponent of the will, will not be dismissed for the failure of the appellant to serve the notice of appeal on certain heirs at law of the decedent, who did not appear or become parties to the proceeding in the lower court.

WILL — UNDUE INFLUENCE — DECLARATIONS OF TESTATOR — EVIDENCE.— Where a will is contested on the ground of undue influence, or other like cause, not drawing into question mental capacity of the testatrix at the time of its execution, neither her prior nor subsequent declarations are admissible to show either that the influence was exercised or that it affected her actions.  Nor are her subsequent declarations of dissatisfaction with the will competent to show that it had been executed through any undue influence.

ID.—EVIDENCE—TREATMENT BY BENEFICIARY.—On the trial of such a contest evidence that a person alleged to have exerted undue influence was penurious is inadmissible, as are also the declarations of the testatrix with reference to the treatment of her by her husband, who was the sole beneficiary under the will.

ID.—INSTRUCTIONS NOT APPLICABLE TO FACTS.—Instructions which in the abstract are correct statements of the law as to the circumstances from which undue influence may be inferred, or as to the different conditions under which its exercise may be looked for, are misleading and erroneous when there is no evidence introduced on the contest of any such circumstance or condition.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial.  W. B. COPE, Judge.

The facts are stated in the opinion of the court.

*Wright & Day, William Gardner, S. J. Parsons,* and *A. A. Oglesby,* for Appellants.

*Boyce & Taggart,* and *Garber, Boalt & Bishop,* for Respondent.

HARRISON, J.—A document purporting to be the last will and testament of Pilar Calkins, deceased, by which she gave all of her property to her husband, Albert C. Calkins, and appointed his father, J. W. Calkins, the executor thereof, was presented for probate to the superior court of the county of Santa Barbara by said J. W. Calkins. Prior to the day set for hearing the application for its probate, Eduardo De La Cuesta, a brother of the deceased, filed written grounds of opposition to its probate, to which the proponent made answer, and the issues presented by this contest were afterward tried by a jury. When the cause came on for trial, upon motion of the contestant, the names of Mrs. J. W. Calkins, Albert C. Calkins, and Mrs. Lily B. Parsons were added as defendants in the proceeding, the last two of whom filed a disclaimer of any interest therein. At the close of the testimony all of the issues, except those upon the claim of undue influence, menace, and fraud, were waived by both parties, and the following special issue was submitted to the jury:

"Did the said Pilar Calkins, at the time of signing the instrument here offered for probate, sign or acknowledge the same under undue influence, duress, or menace of the defendants, or any or either of them?" To this issue the jury replied in the affirmative. The court thereupon rendered its judgment, denying probate to the will. A motion for a new trial was made by the proponent and the defendant, Albert C. Calkins, and, having been denied by the court, an appeal has been taken by them from both the judgment and the order denying a new trial.

1. The appeal from the judgment was not taken until more than sixty days after its entry, and for that reason must be dismissed. A motion has also been made on behalf of certain heirs at law of the deceased, who did not appear or become parties to the proceeding in the court below, to dismiss the appeal from the order denying a new trial, upon the ground that no service of the appeal has been made upon them; but upon the author-

ity of the *Estate of Ryer*, 110 Cal. 556, this motion must be denied. (See, also, *Garnsey* v. *Knights*, 1 Thomp. & C. 259.)

2. We are of the opinion, however, that the evidence fails to sustain the verdict of the jury, and that the order denying a new trial must be reversed. We find in the record no evidence tending to show that the testatrix was subject to any menace, duress, fraud, or undue influence in the execution of her will, or that the document presented for probate is not in all respects the expression of her own volition. There is no evidence that any person ever spoke to her in reference to the manner in which she should make her will, or gave her any suggestions in reference thereto.

The will was drawn by Mr. Wright, an attorney in Santa Barbara, at the request of the testatrix, and in accordance with instructions given him by her, and it does not appear that he had ever seen her before she came to his office for the purpose of having her will prepared. On the day before it was executed, while she was on her way to his office for the express purpose of having him prepare it, she met him and requested him to do so. Upon his asking her how she wished it prepared, she said to him that she desired to will all of her property to her husband, and gave him his name. An appointment for the execution of the will was then made between them for the next day. On the next day she visited his office, and the will was read to her, and her attention drawn to the fact that she had not designated any person as executor, and that a blank had been left in the draft of the will for his name. When Mr. Wright asked her whom she desired to have as executor, she asked him if her husband could be executor, and as he started to write her husband's name in the will she stopped him, and after a moment's reflection said, " I think I will have father Calkins for executor," and directed him to put in the name of J. W. Calkins. Mr. Wright then wrote the name of the proponent in the place left in the draft for that purpose,

and the testatrix signed and executed the will in his presence and that of Mrs. Parsons, who thereupon signed their names as witnesses. Mrs. Parsons, the other witness to the will, is a sister of the testatrix's husband, and at the time the will was prepared was visiting at the house of her father, where the testatrix was then also visiting. In pursuance of an arrangement therefor, made at the instance of the testatrix on the previous evening, Mrs. Parsons took her to town in a buggy on the morning that she first saw Mr. Wright, and while on the way to his office they met him in the street. Mrs. Parsons then got out of the buggy, and withdrew from hearing until the testatrix and Mr. Wright had finished their interview. On their way home the testatrix, of her own accord, and without any inquiry upon the subject, informed Mrs. Parsons that she had given directions that her husband should have her property, and requested Mrs. Parsons to be a witness to the will. On the next day, Mrs. Parsons accompanied the testatrix to Mr. Wright's office, where the will was executed. Mrs. Parsons testified that she said nothing to the testatrix in reference to the will, and had no conversation about it with her. After its execution, the will was placed in an envelope by Mr. Wright, and given to the testatrix, and, in the evening, the testatrix gave the will to the proponent, and requested him to take care of it, and at his direction, placed it in a drawer in his room. The will remained in his custody until after her death. He testified that she never spoke to him about making a will, and that he had never spoken to her upon the subject, and had never heard her say anything on the subject, or heard anyone say anything to her in his presence, and that he did not know the contents of the document until after her death. Mrs. J. W. Calkins testified: " A few days before she went home she said, ' Mother, I want to make a will. What lawyer had I better go to?' I said, 'I guess Judge Wright. He is a good man, and gentle. He won't tire you. Signify your want and it will be sufficient.' She said nothing

about the kind of a will she wanted to make. I did not ask her. She never after mentioned a will to me, or I to her. I never in any way sought to influence Pilar in the making of a will. She returned to Zaca ranch about May 6th, and the conversation was a few days before. She had spoken to me before that time. Just after Mrs. Bergeron was married, she said, 'Mother, I want to make a will. My sisters, after they were married, made their wills to their husbands, and I would like to.' I simply answered as far as politeness required. I made some general remarks on the subject of wills—that some people felt nervous about a will; that they did not need to, and the subject dropped." There is no evidence of any attempt on the part of her husband to influence her in the disposition of her property, or that he had any knowledge of her purpose, or of the fact of making the will, until long after its execution. The claim of the contestant that the testatrix had no affection for her husband would rebut any presumption of undue influence on his part, as would also the claim that the testatrix had a hearty dislike for Mrs. J. W. Calkins.

The respondent does not claim that there is any direct evidence in support of the verdict outside of the evidence of certain declarations of the testatrix. The evidence chiefly relied upon by him consists of certain declarations made by her, which were admitted in evidence over the objection of the proponent. To the extent that these declarations at or prior to the making of the will, afforded any evidence bearing upon the state of the testatrix's mind at the time of the execution of the will—her mental capacity, the condition of her mind toward the object of her bounty, as well as toward the persons by whom she was surrounded, and the correspondence of her acts with the feelings and purposes entertained by her at the time she executed the will— they were properly admitted, and were entitled to consideration by the jury; but, to the extent that they purported to be declarations of the acts of others, or of her

own acts, they were but matters of hearsay merely, whose truth rested in the veracity of the utterer, and upon which there was no opportunity of cross-examination or of explanation by the party who had uttered them, and were not entitled to any weight by the jury, and cannot be considered for the purpose of sustaining their verdict. (*Shailer* v. *Bumstead*, 99 Mass. 112; *Potter* v. *Baldwin*, 133 Mass. 427; *Bush* v. *Bush*, 87 Mo. 480; *Jones* v. *Roberts*, 37 Mo. App. 163; *Waterman* v. *Whitney*, 11 N. Y. 157; *Marx* v. *McGlynn*, 88 N. Y. 357; *Matter of Palmateer*, 78 Hun, 43; *Griffith* v. *Diffenderffer*, 50 Md. 466.)

In order to establish that a will has been executed under undue influence, it is necessary to show, not only that such undue influence has been exercised, but also that it has produced an effect upon the mind of the testator, by which the will which he executes is not the expression of his own desires. The external facts constituting the exercise of undue influence must be established by other evidence than the declarations of the testator. His declarations are incompetent to show either that the influence was exercised, or that it affected his actions, and are inadmissible, except as they may illustrate his mental state, and give a picture of the condition of his mind contemporaneous with the declarations themselves. Whenever the condition of the mind is a fact which it is desirable to prove, it may be established by such evidence as is competent for that purpose. The mental condition of an individual is made manifest to others by his statements, declarations, conversations, as well as by his conduct, and, when the state of a testator's mind, at the time of executing the will, is the fact to be shown, his contemporaneous declarations or statements furnish the most satisfactory evidence of that fact. His statement of the effect that an act or suggestion of another produced upon him at some previous time is, however, only hearsay, while his statement of his feeling or disposition at the time of making the statement is but the expression in words of

his condition at that time, and, so far as it produces a picture thereof, is admissible. "Whenever the mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are original evidence." (1 Greenleaf on Evidence, sec. 102.) This subject and the cases bearing upon it received an exhaustive examination in *Waterman* v. *Whitney*, 11 N. Y. 157, and the rule there laid down is that, where a will is disputed on the ground of fraud, duress, imposition, or other like cause not drawing into question the testator's mental capacity at the time of its execution, neither his prior nor subsequent declarations are competent evidence. The same principle is also stated in *Marx* v. *McGlynn, supra, Griffith* v. *Diffenderffer, supra,* and *Boylan* v. *Meeker,* 28 N. J. L. 274. There is no evidence in the present record that the testatrix was weak in mind, or unduly susceptible to the influence of others. On the contrary, the evidence in this respect shows her to have been possessed of full faculties, and capable of exercising her own will, and, by the consent of the parties, all contest upon the ground of mental incapacity was withdrawn from the consideration of the jury.

The court should not have permitted evidence to go to the jury of any declarations of the testatrix regarding the statements or acts of those by whose influence it is alleged that she was induced to make the will. Her account of the circumstances attending the execution of the will, as well as her statement to Gates, about two weeks before her death, that Mrs. Calkins refused to let her go to the ranch until she had made her will, were incompetent for the purpose of showing the facts stated by her, and did not, in any respect, throw light upon her mental condition at the time of its execution, or the manner in which she wished to make disposition of her property. The most that could be claimed for this testimony is, that it showed her dissatisfaction with the will, but not that it had been made through any undue influence. A testator cannot, after the execution

of his will, impeach its validity by any statements of facts connected therewith, any more than can the maker of any other instrument thus impeach its validity. (*Jackson* v. *Kniffen*, 2 Johns. 31; *Stevens* v. *Vancleve*, 4 Wash. C. C. 262; *Mallery* v. *Young*, 94 Ga. 804.)

The court also erred in permitting the witness, Mrs. Dudden, to testify that, in her opinion, Mrs. J. W. Calkins was a penurious woman, and that she knew that she was penurious. The character of Mrs. Calkins in this particular was immaterial to the issue for the purpose of showing whether she had exercised any undue influence over the testatrix, and the only effect of the evidence would be to prejudice the jury against her in determining the issue they were called upon to decide. So, too, the reasons given by Eduardo for not carrying out the wishes of his sister when she asked him to prepare another will, and what he said to her about revoking her will, were irrelevant to the issues before the court, and should have been excluded. By permitting this testimony to be considered by the jury, the court would naturally lead the jury to think that a desire to change her will was evidence in support of the contestant's claim that it had been originally made through undue influence, whereas, it may have resulted ·from a change of purpose formed at the time of the conversation. The declarations of the testatrix with reference to her husband's treatment of her were also improperly admitted, inasmuch as these declarations did not indicate her feelings in reference to him, except as the jury might be led by inference to conclude that such treatment ought to make her unfriendly to him.

The court instructed the jury as follows: " The exercise of undue influence need not be shown by direct proof. It may be inferred from circumstances, but the circumstances must be such as to lead justly to the inference that such undue influence was employed, and that the will did not express the real wishes of the testator."

This instruction correctly embodies a rule for the

application of evidence, but, as applied to the evidence in the present case, was misleading to the jury, and permitted them to substitute conjecture or suspicion for inference to be drawn from circumstances which were in evidence before them. The language used by Mr. Commissioner Temple, in *McDevitt's Estate*, 95 Cal. 33, is peculiarly applicable here: "Circumstantial evidence is sufficient. It must, however, do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator. I think there is nothing beyond suspicion shown here. There is no proof. Circumstances have been proven which accord with the theory of undue influence, none of which are inconsistent with the hypothesis that the will was the free act of an intelligent mind. This does not amount to proof, and many circumstances are shown which are wholly inconsistent with the hypothesis of undue influence, and the presumption of law, in the absence of all proof in a contest, is in favor of the will."

The court also gave to the jury the following instruction: "Undue influence is that degree of importunity which deprives a testator of his free agency, which is such as he is too weak to resist, and will render the instrument not his free and unconstrained act. It is closely allied to actual fraud, and, like the latter, when resorted to by an adroit and crafty person, its presence often becomes exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, and the more helpless and secluded the victim, the less plainly defined are the badges which usually denote it. Under such conditions the results accomplished, the divergence of those results from the course which would ordinarily be looked for, the situation of the party taking benefits under the will toward the one who has executed it, and their antecedent relations to each other, together with all the surrounding circumstances, and the inferences legitimately deducible from them, furnish, in the

absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud or undue influence has been resorted to and successfully employed."

This language of the court would be unobjectionable for the purpose of instruction in a treatise upon the various modes in which undue influence may be exerted, or the different conditions under which its exercise may be looked for; but it was not proper to be given to the jury in the present case for the purpose of enabling them to render a correct verdict upon the evidence before them. There was no evidence before them from which they were authorized to find that any of the persons charged with exercising undue influence over the testatrix was adroit or crafty, or that the testatrix was helpless or secluded; and the court did not obviate the error in this instruction by afterward saying to the jury that they were not to presume that the court suggested that such was the fact, but that whether any fact existed which was referred to in the instruction was a question for the jury alone. The concluding portion of this instruction, in which they were told: "Under such conditions, the results accomplished, the antecedent relation of the parties, the inferences legitimately deducible therefrom, furnish, in the absence of direct evidence, and in the teeth of positive evidence to the contrary, ample grounds for concluding that fraud and undue influence had been resorted to and successfully employed"—in effect told the jury that they were at liberty, under the circumstances of this case, to find that the will under investigation had been executed by reason of undue influence, although there was no direct evidence of the fact, and in the teeth of positive evidence to the contrary. A court should adapt its instructions to the evidence which is to be considered by the jury, and, instead of giving to them definitions of abstract propositions of law, should so connect its instructions with the facts or evidence to which they are applicable as to lead them to make the proper applica-

tion thereof. "In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to justify such inference, the court should refuse to submit the question to the jury." (*Janin* v. *London* etc. *Bank*, 92 Cal. 14; *Comptier D'Escompte* v. *Dresbach*, 78 Cal. 15; *Razzo* v. *Varni*, 81 Cal. 289.) The court should have pointed out to the jury the circumstances which would justify such conclusion, and left for them to determine whether that character of circumstances existed in the case.

The appeal from the judgment is dismissed. The order denying a new trial is reversed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.