PENN MUT. LIFE INS. CO. v. UNION TRUST CO. OF SAN FRANCISCO, CAL., et al.

(Circuit Court, N. D. California. December 15, 1897.)

No. 12,263.

1. INTERPLEADER—RELATIONS OF CO-DEFENDANTS — EFFECT OF PLEADING AS EVIDENCE.

Two adverse claimants to a fund, who are joined as defendants to a bill of interpleader, occupy, as between themselves, the position of complainant and defendant, and a sworn denial by one of them of the allegations of a cross bill filed by the other has the same effect as evidence as though contained in an answer to an original bill.

2. LIFE INSURANCE—ASSIGNMENT OF POLICY—CONSTRUCTION.

The holder of a life policy assigned the same to a third person, "if she survive him; otherwise to such other beneficiary, having an insurable interest on the life of the insured, as the insured may thereafter in writing nominate, with full power to the insured to change or alter or cancel this assignment at any time." Held, that such assignment was not absolute, and the reservation of the right to change or cancel applied to the assignment in which it was contained, and not to the one appointing a successor to the assignee.

3. SAME—REASSIGNMENT—UNDUE INFLUENCE.

Neither advice given by a physician to his patient as to his reassignment of a life insurance policy, nor assistance rendered him in carrying out such advice, constitute undue influence, unless the influence so exerted is sufficiently strong to substitute the will of the physician for that of the patient, and control the latter's action in the matter.

Rothchild & Ach, for complainant.

Platt & Bayne, for respondent Union Trust Co. of San Francisco.

Cannon & Freeman, for respondent Theresa Abell.

MORROW, Circuit Judge. This is a bill in interpleader brought by the Penn Mutual Life Insurance Company against the Union Trust Company of San Francisco and Edwin R. Dimond, executors of the last will and testament of William H. Dimond, deceased, and Theresa Abell. The controversy is with respect to the moneys due on a policy of insurance written by the complainant on the life of W. H. Dimond for the sum of $10,000. The policy is technically known as a "fifteen-year endowment trust certificate." The insured, W. H. Dimond, died in New York City on June 18, 1896, and the moneys due upon the policy in question were claimed both by the executors of the last will of the deceased, on the one hand, and by Mrs. Theresa Abell, on the other. The complainant brought this suit of interpleader against these adverse claimants, and, under the interlocutory decree of this court, made on July 10, 1897, deposited the sum of $6,079.05 in the registry of the court as the amount due on said policy. After the suit had been instituted, Edwin R. Dimond, one of the defendants and one of the executors of the last will of the deceased, resigned his trust as such, and was subsequently dismissed from the case. The present controversy, therefore, lies between the remaining executor, the Union Trust Company of San Francisco, and Mrs. Theresa Abell. The Union Trust Company answered, and, after setting out the policy as it is set forth in the bill of interpleader, averred that on June 8, 1893, the insured, W. H.

Dimond, made an assignment of it in writing to Theresa Abell; that the assignment, among other things, contained the following clause: "With full power to the insured to change or alter or cancel this assignment at any time;" that the assignment was signed by both W. H. Dimond and Theresa Abell, and was subsequently acknowledged by each, but on different days, before a notary public; that on November 19, 1895, said Dimond canceled the assignment to Theresa Abell, and transferred and assigned the policy to himself, his heirs, executors, etc. Mrs. Theresa Abell answered the bill of complaint, and also filed a cross bill, in which it is averred that the policy was, on the 8th day of June, 1893, assigned as stated in the answer of the Union Trust Company. It is alleged, further, that at the time of the execution of the assignment it was the intention of the parties, and their understanding and agreement, that all the right, title, and interest of W. H. Dimond in and to said policy should pass to and absolutely vest in Theresa Abell, should she survive him; that Dimond knew that the contract did not truly express the intention, agreement, or understanding of the parties; that Theresa Abell did believe that it truly expressed the intention, agreement, and understanding of the parties, and, so believing, she signed and executed the contract, acting through and by reason of a mistake as to its true contents; that Dimond knew of this mistake, but did not inform Theresa Abell of her mistake with respect thereto; that the assignment was made in consideration of an engagement of marriage and an indebtedness of Dimond to Abell of $2,100. There is also an averment that, on November 19, 1895, Dimond attempted to cancel the assignment of the policy to Mrs. Abell, and assign and transfer it to himself, his heirs, executors, etc., but it is alleged that this second assignment was null and void, and was made with the intent and for the purpose of defrauding the cross complainant. The prayer of the cross bill is that the court reform and correct the first assignment so that it shall vest in the cross complainant an absolute title to the policy; that, as reformed, it be enforced against the insurance moneys due under the policy in question; and that the second assignment, purporting to cancel the first, be declared null and void. The Union Trust Company, answering the cross bill, denied the allegations of mistake; denied that the assignment was intended to be an absolute assignment; and denied that the assignment was made in consideration of an engagement of marriage and of the sum of $2,100. To this answer a replication was duly filed. During the hearing counsel for the cross complainant applied to the court for leave to amend the cross bill, which was granted, and it was further alleged that the second assignment of November 19, 1895, which purported to cancel the first assignment of June 8, 1893, was obtained by and through undue influence exercised by Dr. Charles H. Rosenthal upon the insured, W. H. Dimond. The Union Trust Company answered this amendment, denying generally and specifically the allegations of undue influence. The policy, with the first and second assignments referred to, were introduced in evidence. There is no dispute that the policy was, by the assignment of June 8, 1893, transferred by the insured, W. H. Dimond, to Mrs. Theresa

Abell, and that the insured, by the subsequent assignment of November 19, 1895, attempted to cancel the assignment of the policy to Mrs. Abell, and revest it in himself, his heirs, executors, etc. The cross complainant, Mrs. Abell, contends that the assignment to her, of June 8, 1893, was intended to be, and was, in legal effect, an absolute conveyance of the policy, made for a valuable consideration, to wit, an engagement of marriage and $2,100 in cash, and that the second assignment, of November 19, 1895, purporting to cancel the first assignment, was, and is, null and void. It is further contended that the second assignment is void for the reason that it was procured from the insured through undue influence exerted by C. H. Rosenthal, the physician of the insured. On the other hand, the executor, the Union Trust Company, contends that the first assignment is not by its terms, and was never intended to be, an absolute one, but that there was a reservation by the insured of the power to change, alter, or cancel the assignment at any time; that this power was duly and legally exercised on November 19, 1895, when the second assignment, canceling the first, was executed by the insured; and that the second assignment is therefore the only valid assignment now existing with reference to the moneys due upon the policy of insurance in question.

From these contentions, as made by the pleadings and proofs, three questions arise: (1) Was it the intention of the parties to make an absolute assignment of the policy of insurance to Mrs. Abell, and did she, at the time of its execution, believe that such were the terms of the assignment, and, so believing, execute it by mistake, with the knowledge of the assignor? (2) Was the revocation clause in the assignment operative? (3) Was the so-called revocation of the first assignment, purporting to have been made by the second assignment, executed through and by reason of undue influence alleged to have been exercised on W. H. Dimond by his physician, C. H. Rosenthal?

As to the first question, the court is without the proof required by law to show mistake on the part of one party, accompanied by inequitable conduct on the part of the other party, to justify it in correcting and reforming the assignment of June 8, 1893, so that it shall be an absolute assignment. The general rule is that when, in a court of equity, it is sought to set aside, annul, or reform a written instrument for fraud or mistake in the execution of the instrument itself, the testimony showing the fraud or mistake must be clear, unequivocal, and convincing. A bare preponderance of evidence which leaves the question in doubt will not suffice. Maxwell Land-Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015; U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575; Cox v. Woods, 67 Cal. 317, 7 Pac. 722; Van Vleet v. Sledge, 45 Fed. 743; Bowers v. Insurance Co., 68 Fed. 785. Mrs. Abell, whose testimony would have been most material on this point, was incompetent to testify as a witness in her own behalf, under section 858, Rev. St., which provides "that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement

by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." This section is simply declaratory of the long and well settled rule on that subject, and, although it may operate harshly in particular cases, still it is necessary to the prevention of fraud upon estates. While Mrs. Abell was sworn as a witness, and permitted to answer certain preliminary questions, she was not allowed to testify "as to any transaction with, or statement by, the testator." Moreover, the answer of the Union Trust Company to the cross bill is sworn to, and is therefore equivalent to the testimony of two witnesses, or one witness and corroborating circumstances equal in weight to one witness. Vigel v. Hope, 104 U. S. 441; Conley v. Nailor, 118 U. S. 127, 6 Sup. Ct. 1001; Morrison v. Durr, 122 U. S. 518, 7 Sup. Ct. 1215. The answer denied that the assignment was ever intended to be an absolute one; that it was executed under mistake on the part of Mrs. Abell, which was known to the insured, W. H. Dimond; and that the assignment was made for a valuable consideration, to wit, an engagement of marriage and the sum of $2,100. These sworn denials, responsive to the allegations of the cross bill, have not been overcome by the testimony of two witnesses, or by the testimony of one witness and corroborating circumstances equal in weight to one witness.

It is strongly urged by counsel for Mrs. Abell that this rule of equity pleading can have no application to a case of the present nature, because both of the claimants for the insurance money were joined as defendants by the complainant, the Penn Mutual Life Insurance Company. But in this suit of interpleader both of the defendants claim the money adversely to each other, and occupy, as between themselves, the position of complainant and defendant. The Union Trust Company answered the bill of interpleader, relying upon the policy and the assignments as executed by the insured, W. H. Dimond. Mrs. Abell both answered and filed a cross bill, attacking both of the assignments,—the first on the ground that it did not express the contract, and asking that it be reformed, and, when reformed, that it be enforced against the insurance money; the second on the ground that, the first being an absolute assignment, the second was null and void, and, further, that it had been procured through undue influence. Obviously, as between herself and the other claimant, the Union Trust Company, she voluntarily took the affirmative of the propositions she contended for, and was bound by the rules of equity pleading and procedure, as much so as if she had brought an independent suit against the Union Trust Company. But, aside from this, it may be observed that Mrs. Abell signed the assignment of June 8, 1893, and there is a presumption that she knew its contents. Therefore, upon the question of mistake, I must hold that the cross complainant has failed in her proofs.

The second question involves the interpretation to be given to the reservation clause in the assignment of June 8, 1893. The assignment reads as follows:

"For value received, I hereby sell, assign, transfer, and set over, all my right, title and interest whatsoever, as a death claim of, in and to 15-year endowment trust certificate policy No. 90,601, on the life of William H. Di-

mond in the Penn Mutual Life Insurance Company of Philadelphia, unto Theresa Abell assignee of William H. Dimond the insured if she survive him, otherwise to such other beneficiary having an insurable interest on the life of the insured, as the insured may thereafter in writing nominate with full power to the insured to change or alter or cancel this assignment at any time.

"Witness my hand and seal this eighth day of June, A. D. 1893.

"William H. Dimond.
"Theresa Abell.

"Signed, sealed, and delivered in the presence of
    "E. A. Davis,
    "James L. King."

The assignment provides, in effect, for three things: (1) The assignment to Mrs. Abell; (2) the assignment to a nominee to be subsequently named, if Mrs. Abell should not survive the insured; (3) the reservation of the power to change or alter or cancel the assignment at any time. Without taking up in detail the elaborate argument presented by counsel for Mrs. Abell as to the interpretation and validity of this last clause, it is sufficient to say that the principal point made is that the reservation clause applies to the assignment to a nominee to be subsequently named, in case Mrs. Abell did not survive the insured, and that it did not apply to the assignment made to her. But I am unable to give the reservation clause that limited interpretation. In my opinion, it means just what it says, viz. that the insured should have the power "to change or alter or cancel this assignment at any time." It refers to "this" assignment, evidently meaning the assignment to Mrs. Abell. The language used is not necessarily inconsistent with the general intention expressed at the outset to assign the policy to Mrs. Abell. It is an elementary rule of interpretation that the whole of a contract is to be taken together, so as to give effect to every part. Civ. Code, § 1641; Code Civ. Proc. § 1858; Jones, Cont. §§ 210, 214, 217; Faivre v. Daley, 93 Cal. 670, 29 Pac. 256. There is nothing inconsistent or repugnant in construing the reservation clause as applying to any assignment made, or to be made, by the insured. Indeed, that would seem to be its natural and reasonable construction. While it is true that the written part of the assignment was drawn by the insured himself, and is not punctuated, still, in the absence of such a showing of mistake or fraud as would justify the court in reforming the instrument, I am unable to give the clause in question any of the interpretations contended for by counsel for Mrs. Abell. The point is made, further, that the words, "Assignment—Absolute," printed at the head of the assignment, indicate that it was so intended. But these words are part of the printed form used by the parties to this assignment, and it is well settled that, if printed and written parts conflict in an instrument, the written part controls. Civ. Code, § 1651; Harper v. Insurance Co., 22 N. Y. 441. A circumstance, appearing upon the face of the assignment, which is inconsistent with the contention that it was an absolute assignment, is that the policy was assigned to Mrs. Abell in the event that she survived the insured; otherwise to such other person as the insured might name.

The third and last question relates to the charge made by the cross complainant that the revocation, so called,—that is, the second assignment,—was obtained through undue influence exercised by

the insured's physician, C. H. Rosenthal. The latter was called as a witness on behalf of the Union Trust Company, and the cross complainant relies largely upon his testimony, elicited for the most part upon cross examination, to establish this charge. While the testimony of this witness seems to give some color to the allegation of undue influence, yet, considered as a whole, it is not sufficient to establish the fact of undue influence. The witness testified that he had been the physician of W. H. Dimond for several years; that the latter was not in good health, and was suffering from heart disease; that he visited the office of the witness upon one occasion, and appeared to be laboring under some nervous strain, and that he confided to the witness his relations with Mrs. Abell. It appears, from other testimony, that Mr. Dimond and Mrs. Abell had been engaged to be married, but, for some reason that does not clearly appear in evidence, their relations had become somewhat estranged, and the engagement seems to have been broken off. The witness admitted that he advised Mr. Dimond, as his patient, to sever absolutely all relations with Mrs. Abell, and that Mr. Dimond authorized him to act for him in communicating with and effecting a final settlement between himself and Mrs. Abell. He testified that he was empowered to bind Mr. Dimond with reference to any settlement that might be made, and that the latter agreed to be bound by whatever the witness saw fit to do in effecting a final and satisfactory settlement with Mrs. Abell. He, however, subsequently qualified this testimony by stating that he was empowered to bind Mr. Dimond only within the instructions given by the latter to him. While it is palpable from his testimony that he was very anxious that Mr. Dimond should break off all relations with Mrs. Abell, that he advised him to do so, and that he conducted the whole affair with that end in view, yet the court cannot say that his advice or conduct amounted to what the law deems undue influence. He did undoubtedly influence Mr. Dimond, by advice relating to his health and welfare, to sever all relations with Mrs. Abell, but the evidence is not strong enough to justify the court in holding that he unduly influenced him. Undue influence must be of such a nature as to deprive the grantor of his free agency. It must be so strong as to be inconsistent with the idea that the grantor acted freely, and it must result, in effect, that the will of the person exercising the undue influence is substituted for that of the party unduly influenced. Civ. Code, § 1575; In re Kohler, 79 Cal. 313, 21 Pac. 758; In re Calkins' Estate, 112 Cal. 301, 44 Pac. 577; Mackall v. Mackall, 135 U. S. 167, 172, 10 Sup. Ct. 705; Schouler, Wills, 239, 246; 27 Am. & Eng. Enc. Law, 453, and cases there cited. The undue influence must exist at the time of the act, and be a controlling influence in impelling the execution of the act. In re McDevitt, 95 Cal. 26, 33, 30 Pac. 101; Estate of Carriger, 104 Cal. 84, 37 Pac. 785; In re Langford, 108 Cal. 622, 41 Pac. 701; Kelly v. Perrault (Idaho) 48 Pac. 45; In re Kaufman's Estate (Cal.) 49 Pac. 194. The mere fact that the witness did influence Mr. Dimond is not enough. The influence must have been unduly exerted. As was said by Judge Van Brunt in Re Lyddy's Will (Sup.) 5 N. Y. Supp. 639:

"Influence may always be exercised, and it is proper that it should be exercised; 'but it only becomes improper when it becomes undue, and it becomes undue when it substitutes the will of the person exercising the influence for the will of the person who is to do the act.' Arguments, persuasions, and suggestions may be made, so long as the person who is to do the act can weigh the suggestion, and has the ability, if so minded, to resist the influence. Then there is nothing undue in regard to it, though he may yield to it."

An act that is the result of honest argument and persuasion, or of such influence as one may properly exercise over another, does not constitute undue influence. In re McGraw's Will (Sup.) 41 N. Y. Supp. 481. Solicitations, however importunate, do not constitute, of themselves, undue influence. Trost v. Dingler, 118 Pa. St. 259, 12 Atl. 296. The mere fact that the witness, as a physician, occupied a confidential relation with Mr. Dimond, is not, of itself, enough to establish undue influence. Lee v. Lee, 71 N. C. 139; Mackall v. Mackall, supra. Of course, it is a circumstance which, in connection with other evidence, may establish the fact of undue influence. Estate of Brooks, 54 Cal. 474; Dimond v. Sanderson, 103 Cal. 102. 37 Pac. 189; In re Langford, 108 Cal. 622, 41 Pac. 701; Tillaux v. Tillaux, 115 Cal. 675, 47 Pac. 691; Gwin v. Gwin (Idaho) 48 Pac. 301; Lee v. Dill, 11 Abb. Prac. 214. Finally, undue influence must be proven by a preponderance of evidence. It will not be presumed from conjecture or suspicion. In re McDevitt, 95 Cal. 33, 30 Pac. 101; In re Langford, 108 Cal. 623, 41 Pac. 701; In re Calkins' Estate, 112 Cal. 304, 44 Pac. 577; Francis v. Wilkinson, 147 Ill. 370, 35 N. E. 150; Sullivan v. Foley (Mich.) 70 N. W. 322. What is denominated "slight evidence," as defined in section 1835, Code Civ. Proc., is not sufficient to establish undue influence. Estate of Carpenter, 94 Cal. 412, 29 Pac. 1101. The law requires proof of facts when it is attempted to set aside an act apparently done deliberately and executed formally. Small v. Small, 4 Greenl. 220. The testimony of the witness is subject to the criticism that he became, at times, confused in his statements, and did not appear to have a very clear recollection about some of the matters he testified to; but, from all the testimony in the case, I do not think that the evidence is sufficient to justify me in holding that Dr. Rosenthal unduly influenced Mr. Dimond to execute the second assignment, of November 19, 1895, canceling the first assignment, of June 8, 1893. A decree will therefore be entered in favor of the Union Trust Company for the sum of $5,764.95, being the amount remaining in the registry of the court after deducting the sum of $250, allowed to the solicitor of the Penn Mutual Life Insurance Company as his fee, and also the costs upon the suit in interpleader amounting to $64.10. The cross bill will be dismissed, the cross complainant paying costs.