[L. A. No. 2889. Department One.—January 8, 1912.]

In the Matter of the Estate of JULIA ANN KILBORN, Deceased. WILL D. GOULD, Personally, and as Executor of the Estate of Julia Ann Kilborn, Deceased, Appellants.

WILL—CONTEST—ORDER REFUSING NEW TRIAL—APPEAL—JUDGMENT-ROLL—AUTHENTICATION OF PAPERS—CLERK'S CERTIFICATE SUFFICIENT.—On an appeal from an order denying a motion for new trial of a contest of a will after probate, it is not essential that the papers constituting the judgment-roll or the order denying the motion should be authenticated by being embodied in a bill of exceptions. The judgment-roll in such case should include at least the petition for revocation of the probate, the answer thereto, the verdict of the jury and the judgment, and it is sufficient under section 953

of the Code of Civil Procedure, if such papers are authenticated by the clerk's certificate.

ID.—APPEAL BY EXECUTOR—NOTICE DESCRIBING APPELLANT AS "EXECU-TOR OF ESTATE."—The notice of appeal by the executor from such order is not rendered ineffectual because he describes himself therein as the "executor of the estate" of the testator, instead of the "executor of the will."

ID.—SHOWING THAT MOTION FOR NEW TRIAL WAS MADE—RECORD ON APPEAL.—The record on such appeal sufficiently shows that a motion for new trial was made where the transcript contains a duly certified copy of a minute entry showing that a motion for new trial was denied, and the statement discloses that it was prepared and settled to be used on the executor's proposed motion for new trial.

ID.—EVIDENCE REVIEWED—FINDINGS OF INCOMPETENCY AND UNDUE IN-FLUENCE UNSUSTAINED.—Upon a review of the evidence it is held insufficient to sustain the findings of the jury that the testatrix, at the time of the execution of her will, did not understand its provisions, and that the will was executed as the result of undue influence exercised by the person nominated as executor and by one of the witnesses.

ID.—UNDUE INFLUENCE—OPPORTUNITY AND INTEREST INSUFFICIENT.— Mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on the testamentary act.

ID.—EXECUTOR NOT PRESUMED TO HAVE USED UNDUE INFLUENCE.—The mere fact that a person is named as executor and trustee of a will is not sufficient to raise a presumption of undue influence.

ID.—CONTEST OF WILL BY DAUGHTER—DECLARATIONS OF TESTATRIX AS TO HER INTENT—EVIDENCE.—On a contest of a will by a daughter of the testatrix, for alleged incompetency and undue influence, declarations of the testatrix that she intended to leave her property to the contestant were admissible only to show the relations between the two, and the state of the testatrix's mind with reference to the daughter. Where unsoundness of mind is not shown, such declarations, not a part of the *res gestæ*, are entitled to little or no weight, in the absence of proof of influence as to the very testamentary act.

ID.—UNDUE INFLUENCE DEFINED.—Undue influence consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating on it; some means taken or employed which have the effect of overcoming the free agency of the testator and constraining him to make a disposition of his property contrary to and different from what he would have done had he been permitted to follow his own inclination or judgment. It must be such as operates upon the mind of the testator at the time of making the will, and must be an influence relating to the will itself.

ID.—PROOF FROM CIRCUMSTANTIAL EVIDENCE.—The existence of undue influence may be shown by circumstantial evidence, but such evidence must do more than raise a suspicion. It must amount to proof, and has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator.

ID.—BURDEN OF PROOF ON CONTESTANT.—The burden of proving undue influence is on the contestant, and this burden has not been sustained in the present case.

ID.—INEQUITABLE CHARACTER OF WILL.—While the inequitable character of a will may be considered, if linked with other evidence tending to show undue influence, the court should not permit a jury to set aside a will merely upon suspicion, or because it does not conform to their ideas of what was just and proper.

APPEAL from an order of the Superior Court of Los Angeles County denying a motion for a new trial of a contest of a will after probate. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

James H. Blanchard, and Will D. Gould, for Appellants.

James G. Maguire, and D. Joseph Coyne, for Respondent.

SLOSS, J.—This is an appeal from an order denying a motion for new trial of a contest of a will after probate. The appeal from the judgment revoking the probate of the will has heretofore been disposed of, such judgment having been affirmed in this court. (*Estate of Kilborn*, 158 Cal. 593, [112 Pac. 52].)

Some preliminary points urged by the respondent may be noticed before we proceed to a discussion of the merits. It is claimed that the portions of the transcript containing copies of the pleadings, the verdict of the jury, and the decree revoking probate are not to be considered because not authenticated by means of a bill of exceptions, and that the appeal should be dismissed for failure of the appellants to furnish a proper record. But no such authentication of any of the papers named was required. The transcript contains the clerk's certificate in proper form, certifying that the papers in question are correct copies of the original papers in said action.

This was sufficient under the requirements of the Code of

Civil Procedure. Section 661 provides that "the judgment-roll and the affidavits, or bill of exceptions, or statement, as the case may be, used on the hearing, with a copy of the order made, shall constitute the record to be used on appeal from the order granting or refusing a new trial." The papers constituting the judgment-roll are defined in section 670 of the same code, and this section is undoubtedly applicable to such proceedings in probate as the one before us. (*Miller* v. *Lux,* 100 Cal. 609, [35 Pac. 345, 639] ; *Estate of Ryer,* 110 Cal. 556, 560, [42 Pac. 1082].) In a will contest, the judgment-roll must include at least the petition for revocation of the probate, the answer thereto, the verdict of the jury, and the judgment. Under section 952 the appellant, on an appeal from an order granting or refusing a new trial, must furnish the court with a copy of the notice of appeal, of the order appealed from, and of the papers designated in section 661, and these copies, by the provision of section 953, must be certified to be correct by the clerk or the attorneys. There is no occasion, therefore, for incorporating in a bill of exceptions the papers constituting the judgment-roll or the order denying the motion for a new trial. (*Mendocino Co.* v. *Peters,* 2 Cal. App. 24, [82 Pac. 1122] ; *Power* v. *Fairbanks,* 146 Cal. 611, [80 Pac. 1075].) The authentication by clerk's certificate is expressly authorized by the statute, and rule XXIX [144 Cal. lii, 78 Pac. xii] of this court, requiring a bill of exceptions, "except where another mode of authentication is provided by law," has no application.

The further objection is made that the parties appealing, i. e. Will D. Gould, personally, and Will D. Gould, executor of the estate of Julia Ann Kilborn, deceased, were not parties to the proceeding in the court below, and therefore have no right of appeal. We need not take time to discuss the question of the right of Mr. Gould to appeal in his individual capacity. That the executor and proponent of the will of a decedent has a right of appeal is not questioned. The point is, however, that he should, in his notice of appeal, have described himself as "executor of the last will and testament of Julia Ann Kilborn," instead of as "executor of the estate of Julia Ann Kilborn." We think this objection hypercritical and altogether too technical to be worthy of favorable consideration. If the notice of appeal was inaccurate in describing the appel-

lant as executor of the estate rather than as executor of the will, this error, consisting merely in the inadvertent use of the wrong word was apparent upon the face of the notice and could not have misled any one.

The respondent contends, also, that the record does not show that a motion for new trial was made. But the transcript contains a duly certified copy of a minute entry showing that a motion for new trial was denied, and the statement discloses that it was prepared and settled to be used on the executor's proposed motion for new trial. In this state of the record, we think it is sufficiently made to appear that the executor did move for a new trial.

On the merits of the appeal the only point that need be considered is the claim of the appellant that the evidence was insufficient to sustain the verdict.

Julia Ann Kilborn died on the twentieth day of September, 1907, leaving a will executed upon the third day of September, 1907. She was survived by her daughter, Mary Woodman Kilborn, the contestant. Mrs. Kilborn provided in her will, which appears in full in the statement, that her estate (subject to a small pecuniary legacy) should go to Will D. Gould in trust for her daughter, the contestant, during her life, such daughter to receive the sum of one hundred dollars per month out of the income of the estate, or, if the income should be insufficient, out of the principal, and that upon her death the rest, residue, and remainder of the estate should go in equal shares to the brothers and sisters of herself and her deceased husband. It was further provided that if the estate of Mrs. Kilborn's deceased husband should not be distributed to her, then the provision for the daughter should be cut down to fifty dollars per month, and that upon her death no part of the remainder should be distributed to the brothers and sisters of such deceased husband. Gould was named as executor of the will, which was witnessed by Mrs. O. T. Sawyer and Mrs. Ann F. Chappell. The will was admitted to probate and letters testamentary issued to Gould on the fourth day of October, 1907. On September 17, 1908, the daughter, Mary Woodman Kilborn, filed her petition asking for revocation of the probate, and alleging that the testatrix was incompetent to make a will, and that the alleged will was obtained through the undue influence of Gould and Mrs. Sawyer. The executor having

answered, denying all of the allegations of the petition, a trial
was had before a jury. The court, having concluded that
there was no evidence to support the allegation that the testa-
trix was incompetent to make a will, submitted to the jury
three interrogatories bearing on the question of undue influ-
ence. The first, dealing with undue influence on the part of
Will D. Gould, was not answered. Interrogatory No. 2 was as
follows: "Was the execution of the alleged will of Julia Ann
Kilborn obtained by the exercise of undue influence by Will D.
Gould and Mrs. O. T. Sawyer acting jointly?" To this the
jury answered "Yes." Interrogatory No. 3 was, "Did Julia
Ann Kilborn, deceased, fully understood the provisions of the
instrument of date of September 3, 1907, purporting to be her
last will and testament, at the time of the signing and wit-
nessing of the instrument?" To this the answer was "No."
The insufficiency of the evidence to sustain each of these find-
ings was specified with sufficient particularity by the pro-
ponent in the statement on motion for new trial.

It is unnecessary to enter into any extended discussion of
the evidence with reference to interrogatory No. 3. The record
is totally devoid of any showing to support the verdict in
this respect. Mrs. Kilborn at the time of executing her will was
of the age of 63 years, or thereabouts. She was, as all the wit-
nesses agree, a woman of clear mind and fully capable of trans-
acting business. While she had been subject, for a consider-
able time, to a disease which finally ended her life, and was on
the 3d of September, 1907, somewhat weakened, there is
nothing at all to justify the inference that she was not then in
the full possession of her mental faculties, or that she did not
fully comprehend the nature and effect of what she was doing.

And we think the record is equally bare of substantial evi-
dence to support the finding that the will was obtained by
the undue influence of Will D. Gould and Mrs. Sawyer or
either of them. It appeared in the evidence that Mrs. Kil-
born's husband had died in 1904. He had left a will whereby
he undertook to give his property to trustees for the benefit
of his wife and daughter. The estate was community prop-
erty and its value, including the portion to which the widow
was entitled as survivor of the community, was in the neigh-
borhood of thirty thousand dollars. Both Mrs. Kilborn and
her daughter were dissatisfied with the trust provisions of the

will. They employed Mr. Gould, the appellant here, an attorney at law, to represent them in the matter. Proceedings were undertaken with a view to preventing the probate of Kilborn's will, but these efforts were resisted, and successfully resisted, by a corporation which was named as executor of Kilborn's will jointly with Mrs. Kilborn.

At the death of her husband and for some time thereafter Mrs. Kilborn was living in South Pasadena. Her daughter, the contestant here, had associated herself with a religious and benevolent organization known as the "Forward Movement," and in the performance of her duties in this connection had taken up her residence at San Francisco. Some months before her death Mrs. Kilborn moved from South Pasadena to Dolgeville in Los Angeles County, and, after spending some little time in a hotel there, became a boarder at the home of Mrs. Sawyer. It was at this home that the will was made and the testatrix died. The record, which is extremely voluminous, contains a mass of testimony bearing upon the relations of Mrs. Kilborn with her daughter, with Mrs. Sawyer, and with Mr. Gould, but a careful search fails to reveal any substantial evidence tending to support the finding that the will was in any degree the product of undue influence exercised either by Mrs. Sawyer or by Gould. Many witnesses testified on behalf of the contestant that she and her mother had always been bound by the warmest ties of affection. This, indeed, is not open to doubt. There was also testimony that the mother had stated to a number of friends that she intended to leave all of her property to her daughter. During the last few weeks of Mrs. Kilborn's life she was suffering greatly and was becoming weaker in consequence of her disease, which was known to be incurable. It was testified that, nothwithstanding repeated requests from the daughter for information regarding her mother's condition, Mrs. Sawyer did not notify Miss Kilborn of the seriousness of the situation, but, on the contrary, sent messages indicating that Mrs. Kilborn's health was about as it had been. A telegram informing the contestant that her mother was "very low" reached her only on the day of the latter's death. Mrs. Kilborn's body was sent to her old home in New England for burial. There was testimony to the effect that Mrs. Sawyer, with the approval of Gould, who had been named as executor in the will, assumed the entire

responsibility for the arrangements in this regard, and declined to permit the daughter, who had arrived shortly after her mother's death, to control or direct these dispositions. The will was filed for probate by Gould upon the day following the death of the testatrix. The record also contains a great deal of evidence offered for the purpose of showing that Gould had misled the respondent in matters connected with the administration of her father's estate, and that, following the death of the mother, he had assumed an attitude of hostility toward the daughter.

These circumstances, together with the facts that Gould drew the will and that it was witnessed by Mrs. Sawyer, furnish the sole support for the finding of undue influence. But it is obvious, under the rulings of this court in prior cases, that this evidence is entirely insufficient to warrant the verdict. It amounted to nothing more than a showing that Mrs. Sawyer and Gould were so placed as to have had an opportunity to unduly influence the mind of the testatrix, and that they acted in a manner that might be described as suspicious. But this is not sufficient to upset a will. Mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on the testamentary act. (*Estate of Langford,* 108 Cal. 608, [41 Pac. 701]; *Estate of Carithers,* 156 Cal. 422, [105 Pac. 127].) The evidence regarding the conduct of Gould and Mrs. Sawyer had no tendency to establish the exercise of such pressure. There is not a particle of evidence tending to show that either of them ever made any suggestion to Mrs. Kilborn regarding the dispositions to be made by her will. It should be observed, in this connection, that Mrs. Sawyer received nothing under the will, nor did Gould take beneficially thereunder. The fact that he was named as executor and trustee is not sufficient to raise a presumption of undue influence. (*Livingston's Appeal,* 63 Conn. 78, [26 Atl. 470].) The declarations of the testatrix that she intended to leave her property to the contestant were admissible only to show the relations between the two, and the state of Mrs. Kilborn's mind, with reference to the daughter. (*Estate of McDevitt,* 95 Cal. 17, [30 Pac. 101]; *Estate of Arnold,* 147 Cal. 583, [82 Pac. 252].) Where un-

soundness of mind is not shown, such declarations, not a part of the *res gestæ*, are entitled to little or no weight, "in the absence of proof of influence as to the very testamentary act." (*Estate of McDevitt*, 95 Cal. 17, [30 Pac. 101]; *Estate of Langford*, 108 Cal. 608, [41 Pac. 701].) "Undue influence," says this court in *Estate of Ricks*, 160 Cal. 467, [117 Pac. 539], "consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating on it; some means taken or employed which have the effect of overcoming the free agency of the testator and constraining him to make a disposition of his property contrary to and different from what he would have done had he been permitted to follow his own inclination or judgment." And, as has frequently been pointed out, "the undue influence which will avoid a will must be such as operates upon the mind of the testator at the time of making the will, and must be an influence relating to the will itself." (*In re Kaufman*, 117 Cal. 288, [59 Am. St. Rep. 179, 49 Pac. 192]; *Estate of McDevitt*, 95 Cal. 17, [30 Pac. 101]; *Estate of Langford*, 108 Cal. 608, [41 Pac. 701]; *Estate of Calkins*, 112 Cal. 296, [44 Pac. 577]; *In re Wilson*, 117 Cal. 262, [49 Pac. 172, 711]; *Estate of Donovan*, 140 Cal. 390, [73 Pac. 1081]; *Estate of Higgins*, 156 Cal. 257, [104 Pac. 6].)

The existence of undue influence may, no doubt, be shown by circumstantial evidence, but such evidence must "do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator." (*McDevitt's Estate*, 95 Cal. 17, [30 Pac. 101]; *Estate of Calkins*, 112 Cal. 296, [44 Pac. 577]; *Estate of Langford*, 108 Cal. 608, [41 Pac. 701].)

The only testimony in this case bearing upon the making of the will itself tended to show that Mrs. Kilborn sent for Mr. Gould and directed him to draw a will for her; that she had theretofore prepared memoranda, and from these memoranda instructed Mr. Gould as to her wishes; that Gould then returned to his office, where he dictated the will; that, after the will was written, he brought it back and read it to Mrs. Kilborn, who then executed it in the presence of the two witnesses. As against this positive testimony, the mere

suspicions raised by what may be termed peculiar conduct on the part of Mrs. Sawyer and Gould, together with evidence of declarations by the testatrix that she intended to leave all her property to her daughter, cannot be sufficient to overthrow the testamentary act. It is urged by the respondent that Gould, as a witness, was impeached to such an extent as to authorize the jury to disregard his testimony altogether. But the result of this was, at most, to leave the jury without any evidence, one way or the other, on the question of influence or pressure exerted on the testatrix at the time of the making of the will. The burden of proving undue influence is on the contestant, and this burden was not sustained in the case at bar.

It is, perhaps, hardly necessary to say, as this court has said before, that "the right to dispose of one's property by will is most solemnly assured by law, and is a most valuable incident to ownership, and does not depend upon its judicious use." (*Estate of McDevitt,* 95 Cal. 17, [30 Pac. 101].) While the inequitable character of a will may be considered, if linked with other evidence tending to show undue influence, the court should not permit a jury to set aside a will "merely upon suspicion, or because it does not conform to their ideas of what was just and proper." (Id.; *Estate of Langford,* 108 Cal. 608, [41 Pac. 701].) But if the justice and propriety of Mrs. Kilborn's will were a question for consideration here, the record as a whole furnishes strong support to the contention of appellant that the trust provision, which was the feature of the will most objectionable to the contestant, was based upon reasons which were sound and substantial, or may well have appeared so to the mind of the testatrix. There is considerable evidence in the record tending to show that Mrs. Kilborn and her husband had both been strongly opposed to the connection of the contestant with the "Forward Movement"; that they distrusted certain people in active control of that movement and feared that the daughter, if given the absolute control of the estate, would be induced to part with it in the interest of these persons. A very reasonable inference is that the will was framed as it was with the design of protecting, rather than injuring, the contestant. It was shown that in November, 1905, Mrs. Kilborn had executed a prior will, in which a trust provision very similar to that here found

was incorporated. A codicil executed in February, 1907, reaffirmed this will in these particulars. There is not the slightest suggestion that either the prior will or the codicil thereto was induced or procured to be made by the influence of Gould, or that Mrs. Sawyer had any connection whatever with the execution of these instruments. Under these circumstances, the finding that the will of September, 1907, containing virtually the same provisions, was procured by undue influence, is so contrary to the inherent probabilities of the case that, in order to sustain it, the respondent should be able to point either to direct proof of the exercise of such influence, or to evidence of circumstances pointing strongly and persuasively in that direction. But, as we have already said, the record contains no such proof or evidence.

In view of our conclusions on the main question discussed by us, the appellant's further assignments of error do not require consideration.

The order denying a new trial is reversed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.