[Civ. No. 1454. Fourth Appellate District.—November 19, 1934.]

In the Matter of the Estate of PHILLIP HENRY BUSCH, Deceased. WILLIAM CHARLES BUSCH, Appellant, v. SAMERIDA DAVIES et al., Respondents.

Burton E. Hales and H. O. Harrawood for Appellant.

Sarau & Thompson and A. Heber Winder for Respondents.

BARNARD, P. J.—The appellant owned a ranch on which his father, Phillip Henry Busch, now deceased, held a mortgage. Because of a default in certain payments the father started to foreclose the mortgage in the fall of 1930. Thereafter, the appellant conveyed the ranch to his father in payment of the mortgage and in consideration of an additional cash payment. The father later died, leaving a will dated April 21, 1931, containing the following provision: "I give nothing to my son, William Charles Busch. I make this provision in my will for the reason that my wife and I received ill treatment by my said son, during our old age." It appears that another will had been executed by the deceased on the preceding day, in which a smaller share in the estate was left to the respondent executrix.

The appellant filed a contest to the probate of the will, alleging in a first cause of action that the deceased was of unsound mind and in a second cause of action charging the respondent executrix and her husband with having procured the execution of the will through undue influence, in that they had made certain misrepresentations to the decedent with respect to the appellant and that they had, in the presence of the testator, made derogatory and uncomplimentary remarks against the appellant, and that said misrepresentations and remarks had deceived the decedent and unduly influenced him in the making of said will. An answer was filed and the matter was tried before the court without a jury. At the conclusion of the evidence the respondents moved for a nonsuit as to both causes of action. The appellant consented to the granting of the motion as to the first cause of action and that motion was granted. After argument, a nonsuit was also granted as to the other cause of action and from the ensuing judgment this appeal is taken.

 The only point raised is that the charge of undue influence is supported by some substantial evidence, and that the granting of a nonsuit was therefore erroneous.

While the record contains no evidence of the kind usually relied on as tending to show the use of undue influence, the appellant contends that certain statements made by the respondent executrix and her husband constitute false representations and, as such, are sufficient to make a substantial showing of undue influence. The appellant testified that Mr. Davies, the husband of the executrix, told him that if he would deed the ranch to his father he, Davies, would see that the appellant would eventually come in with the rest of the heirs on an equal basis, but that if he did not meet that demand he would see that he did not share in the will with the others. It is not even claimed that this statement was made in the presence of the testator or reported to him. The appellant also testified that on another occasion the executrix told him to leave his father's home, and that "She said we wouldn't pay father his interest and money due him, and she didn't want us around there at all. . . . She said we was letting mother and father starve to death. . . . She said father would take steps to foreclose on me if I didn't pay."

The appellant's wife testified to the same effect but added that when the statements were made the testator told the executrix to "keep quiet". Another witness testified that she had heard the husband of the executrix say in the presence of the testator that the appellant "had made plenty of money while on the Oak Glen Ranch, but had failed to provide for his father and mother; that if it hadn't been for him and his wife, he didn't know what would have become of his father-in-law and mother-in-law. He also stated that Willie Busch would have robbed him (the testator) blind if it had not been for himself and wife; that the sons took no part in protecting the father."

With respect to the truth of the representations claimed to have been made to the deceased the appellant testified that he had offered to take care of his parents if they would come and live with him, that they had refused to do this, and that he had never refused to pay his father money at any time although he had been behind in his interest and being unable to pay the same, had deeded the land back to his father in payment of the mortgage.

In *Estate of Bryson,* 191 Cal. 521 [217 Pac. 525], the court said: " 'In order to establish that a will has been executed under undue influence, it is necessary to show, not only that such influence has been exercised, but also that it has produced an effect upon the mind of the testator by which the will which he executes is not the expression of his own desires.' (*Estate of Calkins,* 112 Cal. 296 [44 Pac. 577].) . . . Proof to establish undue influence must be had of a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made. (*Estate of Carithers,* 156 Cal. 422 [105 Pac. 127].) . . . It consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating upon it, some means taken or employed which have the effect of overcoming the free agency of the testator and constraining him to make a disposition of his property contrary to and different from what he would have done had he been permitted to follow his own inclination or judgment."

And in *Estate of Anderson,* 185 Cal. 700 [198 Pac. 407], this language is used: "It is not undue unless the pressure

has reached a point where the mind of the person subjected to it gives way before it so that the action of such person taken in response to the pressure does not in fact represent his conviction or desire, brought about perhaps by argument and entreaty, but represents in truth but the conviction or desire of another. As was said in *Estate of Donovan,* 140 Cal. 390, 394 [73 Pac. 1081], quoting from Chaplin, 'The true test of undue influence is that it overcomes the will without convincing the judgment.' "

It may be said of several of the statements relied upon by appellant as being misrepresentations that they are more in the nature of expressions of opinion than representations as to facts. While they disclose animosity toward the appellant, there is no evidence to indicate that even such statements as were made in his presence were believed or acted upon by the testator. On the occasion when most of the statements were made by the executrix the testator reproved her for making the same. The will was executed more than two months after the last of these statements is supposed to have been made and there is nothing to show that any of the respondents had anything to do with the making of the will other than the inference which the appellant would draw from the testimony above referred to. The fact that the testator then made two wills, a day apart, in the absence of evidence of any further activity on the part of any of the respondents, indicates that he was acting for himself. There is an entire absence of evidence relating to the time when the will was made, and there is no substantial proof that the will is not an expression of the desires of the testator, or that his mind was subjugated to the will of the executrix or her husband.

We think the evidence in this case fails to come up to the standard required to establish that a will has been executed as a result of undue influence. It might be said here as was said in *In re Langford,* 108 Cal. 608 [41 Pac. 701, 702] : "The contention of respondents, when thoroughly sifted, seems to be about this: That there is evidence to the point that appellant had a *general* influence over the deceased which ought to be classified as 'undue' influence; and that, therefore, although when he made his will, under the circumstances above stated, he was apparently free to act as he pleased, yet it must be inferred that this general influence

of appellant accompanied him, subverting his volition and coercing him to act against his real wishes. To maintain such a strained and difficult theory would require evidence very different from that presented in the record."

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.