[Civ. No. 5846.   First Appellate District, Division Two.—June 15, 1927.]

JAMES K. PRIOR, Jr., et al., Respondents, v. MATILDA ANDREWS et al., Appellants.

[1] TRUSTS—WILLS—EVIDENCE.—In this action for partition of real property, the evidence was sufficient to show that a devise of a double portion of testator's property to a particular daughter was on at least an implied promise that she would take and hold the devised properties in trust for the use of one of her brothers.

[2] ID. — LEGACY — PROMISE TO HOLD FOR PARTICULAR PURPOSE — EQUITY.—A court of equity must impose and enforce a trust upon a devisee or legatee who procured a legacy to be given by a promise, express or implied, that the property devised would be taken and held for some particular purpose or use.

[3] ID.—ENFORCEMENT OF SECRET TRUST—EVIDENCE—FINDINGS—JUDGMENT.—While evidence in actions to enforce secret trusts should be clear, satisfactory, and convincing, the duty of determining whether it satisfies these requirements is the province of the trial court, and if there is sufficient evidence to sustain its findings the judgment will be held to be conclusive.

(1) 39 Cyc., p. 85, n. 74.   (2) 39 Cyc., p. 74, n. 6.   (3) 4 C. J., p. 898, n. 92; 39 Cyc., p. 84, n. 67, p. 645, n. 20.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Michael J. Roche, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Durbrow, Corbet & Selby and Eugene S. Selvage for Appellants.

Vogelsang & Brown and Bert Schlesinger for Respondents.

2.   Impressing share of heir, devisee, or legatee with constructive trust because of his fraud in frustrating decedent's intention to give the property to a third person, notes, 8 L. R. A. (N. S.) 698; 31 L. R. A. (N. S.) 176. See, also, 25 Cal. Jur. 159; 26 R. C. L. 1241.

3.   Degree or intensity of proof necessary to establish a trust, note, 23 A. L. R. 1500. See, also, 25 Cal. Jur. 248; 26 R. C. L. 1202.

BARTLETT, J., *pro tem.*—This action was commenced by the filing of a complaint in the superior court of the city and county of San Francisco on May 22, 1924, the action being numbered in that court 146,986, the relief sought being a partition of seventeen parcels of land situated in the counties of San Mateo, Santa Clara, Alameda, and the city and county of San Francisco, California. Plaintiffs James K. Prior, Jr., Toney Prior, and Josephine Metzner and defendants Matilda Andrews and Leland S. Prior are surviving children of James K. Prior, Sr., and Mary Prior, defendants Pearl Gladys Barnett and Fred E. Delger are surviving children of one Margaret Delger, a deceased daughter of James K. Prior, Sr., and Mary Prior and defendant Lester F. Prior is a surviving son of a deceased son of James K. Prior, Sr., and Mary Prior.

James K. Prior, Sr., former record owner of these properties, died testate on March 22, 1905. By his will, executed February 19, 1903, he devised one-half of the community property of which he died possessed to his wife Mary Prior, bequeathed $5,000 to Mary Prior in trust for Lester Francis Prior, a grandson; bequeathed $200 and his watch and chain to his son Toney Prior, and devised and bequeathed the residue of his estate, consisting of one-half of the community property, and $200,000, which he declared to be his separate property, to his other children in the following proportions: One-sixth to James K. Prior, Jr., one-sixth to Leland S. Prior, one-sixth to Josephine Metzner, one-sixth to Margaret E. Delger, and two-sixths to Matilda Andrews. This will was probated and the estate was finally distributed on March 30, 1906. By the decree of disribution there was distributed to his wife, Mary Prior, the homestead (which is parcel 1 of the properties described in the complaint herein), certain specified personal property, and one-half of the $200,000 claimed to be his separate estate. The devisees and legatees agreed out of court to the distribution to be made, and it recited in the decree: "Since said will was admitted to probate Matilda Andrews, Josephine Metzner, Margaret Delger, James K. Prior, Jr., and Leland S. Prior have consented and agreed with Mary Prior and Lester Francis Prior that the net residue should be distributed on the following basis: One-half thereof to

Mary Prior; 1/14 each to James K. Prior, Jr., Josephine Metzner, Margaret Delger, Leland S. Prior; 2/14 to Matilda Andrews; 1/14 to Mary Prior as trustee for the benefit of Lester Francis Prior.'' There was distributed to Toney Prior $200 and a gold watch and chain. Mary Prior died testate on October 14, 1922, leaving as part of her estate all of parcel number 1 of the lands described in the complaint and an undivided one-half interest in each and all of the other sixteen parcels of land. Her will was admitted to probate on November 20, 1922, and letters testamentary thereon were issued to James K. Prior, Jr., and Toney Prior, who were such executors when this action was begun.

On May 22, 1924, a decree of partial distribution was made in the estate of Mary Prior, distributing all her interest in the seventeen parcels of land as follows: one-seventh of parcel 1 and 1/14 of parcels 2 to 17, inclusive, to James K. Prior, Jr., a similar proportion to Toney Prior, Josephine Metzner, Matilda Andrews, Leland S. Prior, and Lester F. Prior, a 1/21 of parcel 1 and 1/42 of parcels 2 to 17, inclusive, to Pearl Gladyse Barnett, and a similar proportion to Fred E. Delger and to N. L. Barnard, as executrix of the will of Edward F. Delger, who was the father of Pearl Gladys Barnett and Fred E. Delger, they being the devisees of their father of his interest in these properties.

In the complaint it is alleged that the plaintiff Toney Prior has an estate of inheritance to the extent of an undivided one-seventh part in all of the properties and that the defendant Matilda Andrews holds upon trust for his sole benefit the legal title to an undivided 1/14 part of parcels 2 to 17 of the properties, that is to say, one-half of the one-seventh interest of said Toney Prior in and to said parcels 2 to 17, inclusive; that the legal title to such undivided 1/14 part in these parcels of land came to her, was accepted by her, and stands in her name as a portion of a direct devise to her under the last will of James K. Prior, Sr., deceased, who was the father of said Toney Prior and Matilda Andrews, in trust for said Toney Prior, under an understanding and agreement with her father had before his death that she would hold the legal title to said properties in trust for her brother said Toney Prior, and

that on the demand of said Toney Prior she would convey
to him the legal title of the properties so devised to her
in trust. The complaint alleges the distribution of this
1/14 interest claimed to be held in trust to Matilda Andrews
made in the matter of the estate of James K. Prior, Sr.,
on August 3, 1906, and that Matilda Andrews has never
parted with such legal title. It is also alleged that Toney
Prior during the month of April, 1924, demanded from
Matilda Andrews a transfer of the legal title to this 1/14
interest in parcels 2 to 17 of the properties involved to
him and that she refused to make such transfer. The
demand for a transfer of the title and the failure to make
the same are not denied. The defendant Matilda Andrews
denies that she holds any of said properties in trust for the
plaintiff Toney Prior and asks that she be adjudged the
owner in fee of an undivided 3/14 interest in the prop-
erties involved. She also asks that the action be dismissed,
alleging as a ground for dismissal a claim that the com-
plaint in this action was filed before the decree of par-
tial distribution in the estate of Mary Prior, · deceased,
was signed by the court and filed with the clerk thereof or
entered in the minutes of said court.

By its findings the trial court found in favor of the plain-
tiffs on all the material allegations of the complaint, and
that this action was commenced and the complaint therein
filed with the clerk after the decree of partial distribu-
tion in the estate of Mary Prior, deceased, was signed by
the court and after said decree was filed with the clerk
of said court. The trial court also found that the partial
decree of distribution in the Mary Prior estate was on
June 13, 1924, entered at length in the minute-book of
said court; that James K. Prior, Jr., and Toney Prior, in
their representative capacities as executors of the last will
of Mary Prior, were not, when the action was commenced
nor when the complaint was filed, in possession of any of
the lands as such executors; that there are no liens or
encumbrances on said lands of record or at all, and that
no person or persons other than the plaintiffs and defend-
ants in the action are interested in the properties as own-
ers or otherwise. Partition and sale of the properties was
ordered and directed and commissioners appointed to make
such partition and sale. From this judgment and decree

the defendants Matilda Andrews and Leland S. Prior have taken this appeal.

The claim of appellants that this action was prematurely instituted has been decided to be without merit by the decision of this court rendered in *Andrews* v. *Metzner et al.,* *ante,* p. 764 [257 Pac. 203], and for the reasons given in the opinion of this court rendered in that case the action of the trial court in finding that this action was not prematurely instituted and in denying appellants' request for a dismissal thereof is approved and affirmed.

This leaves for determination by this court the question of whether or not appellant holds in trust for the respondent Toney Prior the legal title to a one-half of one-seventh of the properties distributed to her by the decree of distribution made and entered in the estate of James K. Prior, Sr., deceased, on March 30, 1906, which she has been found to so hold in trust by the trial court by its judgment and decree in this action.

Respondents claim that the constructive trust which the trial court has found to exist in favor of Toney Prior arises out of the secret understanding had between James K. Prior, Sr., and appellant Matilda Andrews prior to the death of James K. Prior, Sr., that said Matilda Andrews would hold in trust for the benefit of her brother Toney one-half of the properties bequeathed and devised to her in the last will of said James K. Prior, Sr., and that she would on demand of Toney Prior, made at any time after the death of James K. Prior, Sr., transfer the legal title to such properties to Toney Prior. In this regard Toney Prior testifies that prior to his father's death his father told him that he would like to leave his share of the properties tied up with one of his sisters; that he, Toney, said this would be satisfactory, that he suggested that it go to Mrs. Andrews; that he afterward discussed the matter with Mrs. Andrews and that she said she would hold it for him; that this conversation with his father was about two weeks before his father's will was drawn. That his father told him to telephone Mr. Whittemore, an attorney at law, to come up and to tell him that his father wanted to prepare his will, and that his father told him after he saw Mr. Whittemore and after he had seen his sister, Mrs. Andrews,

that he had left his, Toney's portion with Mrs. Andrews. That his father also told him that he had approached Mrs. Metzner, a sister of Mrs. Andrews, on the subject and that she stated she would willingly act, but that she thought he, Toney, was more favorably inclined toward Mrs. Andrews and that he told his father he was so inclined. That his father in their conversations told him that half of what he left to Mrs. Andrews was his, Toney's. That after his father's death and the probate of his will his sister paid him various sums of money, dividends from stocks of corporations, proceeds of sales of properties and rentals from properties, and that she took receipts for all such payments made to him, and that these payments were always one-half of the moneys that came to the hands of Mrs. Andrews from the properties of his father distributed to her, and that this practice continued for some eighteen years after his father's death. A large number of the receipts given to Mrs. Andrews were introduced in evidence and are set out in full in the transcript filed in this court. Mrs. Andrews admitted having paid her brother Toney one-half of the dividends received from corporate stock of the James K. Prior estate properties and also one-half of the proceeds of sales of certain properties and that Toney had paid her in 1923 some $348.42 income tax for 1922. She also testified that she paid Toney one-half of $9,971.42, moneys distributed to her from her father's estate. She also testified that Toney paid her one-half of $4,000 of a fund for building a structure on one of the properties that was distributed to her of her father's. Mrs. Andrews claims that all these payments were gifts to her brother made because of her respect and loyalty and love for him.

There is a sharp conflict in the evidence as to what transpired at the opening of the will of James K. Prior, Sr., a short time after his death, all the members of the family being present. Some of those who were present claim that Mr. Whittemore told Mrs. Andrews that one of the two portions bequeathed to her in the will belonged to Toney and that she acquiesced in the statement, while Mrs. Andrews and Mr. Whittemore deny that any such statement was made or assented to.

As a witness in her own behalf Mrs. Andrews gave the following evidence of a conversation with her father concerning his will:

"Mr. Durbrow: Q. Mrs. Andrews, did you ever have any conversations with your father with reference to his making his will? A. Yes, sir.

"Q. When did you have a conversation with him relating to that matter? A. In, I think it was, 1902.

"Q. Do you know the month, Mrs. Andrews? A. No. I couldn't say just the month.

"Q. Was it before or after he made his will? A. Well, this was before he made his will, I think.

"Q. Where was this conversation held, Mrs. Andrews? A. On Twenty-fifth Street, near San Jose Avenue.

"Q. Who was present? A. Just my father and myself.

"Q. What was that conversation? State it as nearly as you can. A. Well, I had been down town shopping, and I went to make the Valencia street car, and got off at Twenty-fifth and Valencia streets, and I was walking up Twenty-fifth street intending to go over and see my mother and father, as my father hadn't been very well for some time. And as I neared San Jose avenue my father turned the corner and came toward me. And I greeted him. He said, 'Well, hello, old woman, I am awfully glad to see you.' My father either called me 'old woman' or 'grandmother.' Rarely called me by my given name. He said, 'I have a little matter I would like to talk over with you.' He says, 'You know Toney has been a great disappointment to me. He has gotten into trouble. He has brought disgrace on the family. And it is undermining my health. I feel very miserable. He has married a woman that sued him for $20,000 damages, claiming that he was the father of her child.' And all this had a tendency to upset my father. And he said, 'I have given you two portions of my estate for you to do with as you think best, and to dispose of as you think best, and for you not to mention this to anybody.'

"Q. Was that the extent of the conversation? A. That was the extent of the conversation, yes, sir.

"Q. At that time? A. Yes, sir.

"Q. Did you have any further conversation with your father? A. Not in regard to his will, no, sir.

"Q. Now, was that conversation had before or after he made his will? A. Well, it was after he had made his will, because he said that he had left me two portions.

"Q. Now, did you ever discuss that subject with your father again? A. No, sir. Never."

That the relations between Mrs. Andrews and her brother Toney were not amicable or harmonious at the time of the trial because of disagreements arising between them on account of property matters involved in their mother's estate is plainly apparent from the record, but there is nothing therein tending to show that the relations between this brother and sister were not of a most kindly and affectionate character when their father made his will and for many years thereafter.

[1] There is sufficient evidence to sustain the judgment and decree of the trial court determining that one-half of the properties devised to Mrs. Andrews by her father was devised to her in trust for her brother Toney Prior. Her payment of one-half of the money legacy of $9,971.42 from her father's estate to her brother, of one-half of all dividends received on corporate stock which came to her, of one-half of rentals and sale proceeds of real properties, her taking of receipts therefor, of repaying to him $5.43 "for rebate McEnerney Decree in Richmond Properties," of accepting $2,000 paid by a check on his personal account for a building fund for one of the properties, her collection from him of one-half of federal income tax on incomes from the properties, and the many other payments made to him are not consistent with her claims that these payments made during a period of eighteen years, were voluntary gifts on her part. Her conversation with her father relative to his will and to her brother Toney's affairs, her dealings with her brother in relation to the properties and the income therefrom cannot be regarded as other than proving that the devise given her by her father's will was given on an implied promise at the least that she would take and hold one-half of the devised properties in trust for the use of her brother.

[2] There is no question but what a court of equity must impose and enforce a trust upon a devisee or legatee who has procured a legacy to be given by a promise express or implied that the property devised would be taken or

held for some particular purpose or use. (*Brison* v. *Brison,* 75 Cal. 525 [17 Pac. 689]; *O'Donnell* v. *Murphy,* 17 Cal. App. 625 [120 Pac. 1076]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]; *Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506]; *Amherst College* v. *Ritch,* 151 N. Y. 323, 324 [37 L. R. A. 305, 45 N. E. 876]; *Church* v. *Ruland,* 64 Pa. 432.)

The reasons for this rule are clearly stated in *Amherst College* v. *Ritch,* 151 N. Y., pages 323, 324 [37 L. R. A. 305, 45 N. E. 876], where it is said: "If the testator is induced either to make a will or not to change one after it is made, by a promise, *express or implied,* on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise. The trust springs from the intention of the testator and the promise of the legatee, . . . The rule is founded on the principle that the legacy would not have been given . . . unless the promise had been made and hence the person promising is bound, in equity, to keep it, as to violate it would be fraud. While a promise is essential it need not be expressly made, for active cooperation or silent acquiescence may have the same effect as an express promise. If a legatee knows what the testator expects of him, and having an opportunity to speak says nothing, it may be equivalent to a promise provided the testator acts upon it. . . . The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has full effect, by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee *ex maleficio,* to turn over the gift to them. The law, not the will, fastens the trust upon the fund, by requiring the legatee to act in accordance with the instructions of the testator and his own promise. Neither the statute of frauds nor the statute of wills applies, because the will takes effect as written and proved; but, to promote justice and prevent wrong, the courts compel the legatee to dispose of his gift in accordance with equity and good conscience."

[3]   The evidence in this case, taken as a whole, supports and establishes the trust claimed. In some respects it is conflicting and contradictory. While in actions seeking the enforcing of secret trusts the evidence should be clear, satisfactory, and convincing, the duty of determining whether it satisfies these requirements is the province of the trial court, and if there is sufficient evidence to sustain its findings the judgment will be held to be conclusive. The trial court is in a position to best judge of the weight and value of the evidence and of the credibility of the witnesses.

In *Harris* v. *Harris*, 136 Cal. 379 [69 Pac. 23], it is said: "The rule is well settled that one who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing. Whether the evidence in any particular case is of this character must be determined by the trial court, and its determination thereon will be accepted by this court as conclusive." To the same effect are the decisions in *Sherman* v. *Sandell*, 106 Cal. 373 [39 Pac. 797]; *Bollinger* v. *Bollinger*, 154 Cal. 695 [99 Pac. 196]; *Brison* v. *Brison*, 90 Cal. 323 [27 Pac. 186]; *McRea* v. *McRea*, 67 Cal. App. 480 [227 Pac. 933]; *Stahl* v. *Stahl*, 214 Ill. 131 [105 Am. St. Rep. 101, 2 Ann. Cas. 774, 68 L. R. A. 617, 73 N. E. 319].

The decree and judgment appealed from are affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 14, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1927.