247 Cal.App.2d 574 (1967)
55 Cal. Rptr. 750
Estate of MAUDE STRAISINGER, Deceased.
ELIM MISSIONARY ASSEMBLIES, Plaintiffs and Appellants,
v.
LEWIS W. CUNNINGHAM et al., Defendants and Respondents.
Docket No. 8264.
Court of Appeals of California, Fourth District, Division Two.
January 3, 1967.
*577 Paul J. Henry, Richman, Garrett & Ansell and Lionel Richman for Plaintiffs and Appellants.
Beardsley, Hufstedler & Kemble, Harry L. Hupp and Shari L. Nelson for Defendants and Respondents.
*578 TAMURA, J.
Following a special jury verdict in a will contest before probate, a judgment was entered admitting Maude Straisinger's will to probate. Contestants appeal from the judgment.
In their written opposition to the probate of the will, contestants specified five grounds: Unsound mind, improper execution of the will, fraud, undue influence, and estoppel. Improper execution was abandoned at pretrial; the causes of action based upon unsound mind and estoppel were dismissed on a motion for a nonsuit at the close of contestants' case; and the jury was directed to find against contestants on the fraud cause of action. On undue influence, the only issue submitted to the jury, the verdict was adverse to the contestants.
[1] [See fn. 1] Contestants appeal on the following grounds: (1) The court erroneously granted a nonsuit on the estoppel cause of action and (2) on the undue influence issue, the court erroneously (a) excluded certain testimony and (b) failed to instruct the jury on the presumption of undue influence.[1]
Since the contestants do not attack the sufficiency of the evidence to support the jury verdict on the issue of undue influence, it is unnecessary to review the evidence in detail.
On February 2, 1962, Suits and Maude Straisinger, husband and wife, executed mutual wills pursuant to which the property of each was to pass to the survivor as the sole devisee and upon the death of the survivor, to contestant, Elim Missionary Assemblies, a New York charitable corporation. Suits died on September 17, 1962. Thereafter, on October 15, 1962, Maude prepared and executed a holographic will devising to the proponents, Lewis W. and Gladys Uldene Cunningham, husband and wife, "share and share alike with right of survivorship" all of her estate. Maude died on March 22, 1964.
Mrs. Cunningham had known Maude since 1928 and they had been very close friends ever since. They attended the same church for many years. Maude frequently referred to Mrs. Cunningham as her "foster" or "adopted" daughter since she had no children of her own. Over the years Maude *579 had given gifts of sentimental value to Mrs. Cunningham. Maude was also a deeply religious person and had a life-long interest in foreign missionary work and had, from time to time, made contributions to those causes.
Following the death of her husband, Maude turned to the Cunninghams for assistance in handling her business affairs. The Cunninghams looked after her needs, accompanied her to church, took her shopping and cared for her when she was ill. Approximately a month after her husband's death, Maude deeded to the Cunninghams certain property referred to as the "Gill Battery property" which had been conveyed to Maude in connection with an arrangement for the settlement of a financial obligation from Gill to the Straisingers. In March 1964, Maude deeded her home to the Cunninghams. In addition, she transferred substantial sums on deposit in a savings and loan association to the joint account of herself and Mr. Cunningham. The deeds to the Gill Battery property and the home were kept by Cunningham in his safety deposit box and recorded a few days after Maude's death.
The facts relating to the execution of Maude's holographic will, viewed in the light most favorable to proponents (Crawford v. Southern Pac. Co., 3 Cal.2d 427 [45 P.2d 183]), were as follows:
On October 15, in response to a call from Maude for assistance in reconciling her checkbook, Mr. and Mrs. Cunningham went to her home. Mr. Cunningham commenced to balance the checkbook, working at the kitchen table. Mrs. Cunningham occupied herself by reading some religious literature given her by Maude. Maude sat at the kitchen table with a sheaf of papers in front of her including a three-page document which was either her former will or the will of her husband, Suits. Looking at the second page of the document she remarked, "How did that get in there?" To which Mr. Cunningham replied, "How would I know." Maude asked Mr. Cunningham if she could write her own will, in response to which he suggested that she see a lawyer. Maude stated that she was through with lawyers. Mr. Cunningham told Maude that she could write her own will and use the form of the will she had before her. She asked whether she could write the will on notebook paper. Mr. Cunningham remarked that it was rather small and went to his car and brought back several sheets of legal size paper which he gave her. Maude wrote while Mr. Cunningham worked on the checkbook and he did not know or inquire as to the contents of her writing. She *580 wrote for 30 or 40 minutes. As Maude finished writing, a Mrs. K., an old friend of Maude's, stopped in for a visit. Maude requested her to witness the document she had written. Mrs. K. testified that Maude appeared normal and under no pressure. Maude then went over to get a neighbor, Mrs. H., to act as a witness. Mrs. H. came reluctantly and, after first stating she didn't want to sign a paper without reading it, she did sign as a witness. Mrs. H. testified that Maude appeared to be alert, in good health, and normal. The Cunninghams never asked Maude to make a will nor did they know the contents of the document. After the signing and witnessing of the document, Maude handed the paper to Mr. Cunningham and said, "Here, this is yours." Mr. Cunningham put the document in his pocket and did not read it until after he got home.
The cause of action based upon estoppel alleged in substance that on February 24, 1964, when attorney Henry and three ministers, including a former president of Elim, called at Maude's home, the Cunninghams represented to them that Maude had already made a will naming Elim as the sole beneficiary. Contestants alleged that by their conduct the Cunninghams are estopped to deny that the will of February 2, 1962, naming Elim as the principal beneficiary, was the last will.
The evidence relating to the February 24, 1964, incident, viewing it in the light most favorable to contestants (Kopfinger v. Grand Central Pub. Market, 60 Cal.2d 852 [37 Cal. Rptr. 65, 389 P.2d 529]; Meyer v. Blackman, 59 Cal.2d 668, 671 [31 Cal. Rptr. 36, 381 P.2d 916]), was substantially as follows: Several months earlier Maude had written to Mr. Henry, whom she did not know personally, stating that she was interested in seeing him and requested that he stop at her house the next time he was in the area to discuss her business affairs. Mr. Henry did not answer the letter nor did he go to her home. He had also been contacted by a Rev. Bryan, local minister of the Evangel Temple in Redlands, who reported that there was a Maude Straisinger who was interested in foreign missions. Rev. Bryan conveyed the same information to a Rev. Mahoney, a member of the board of directors of an organization known as World Missionary Assistance Plan of which Mr. Henry was also a board member. A Rev. Spencer, founder of Elim and its president emeritus, happened to be in Redlands on February 23, 1964 and spent the evening with Rev. Bryan and Mahoney at which time they discussed *581 Mrs. Straisinger. On February 24, 1964, Mr. Henry and the three ministers went to Maude's home unannounced for the purpose of ascertaining whether Maude wanted to make a will and, if so, to persuade her to draw a will in favor of foreign missionary work. Maude was in bed with a cold and Mrs. Cunningham, who was caring for her, received the visitors and they all crowded into Maude's tiny bedroom. Maude was delighted to see the visitors and expressed her interest in their cause. During the visit. Mrs. Cunningham reminded Maude of a will which Mrs. K. and Mrs. H. had witnessed. In a conversation between Mr. Henry and Mrs. Cunningham, according to Mr. Henry, Mrs. Cunningham stated that she knew Maude had made a will and that the entire estate was to go to Elim. Upon being further questioned, Mrs. Cunningahm phoned her husband who came over promptly and answered inquiries which, according to the visitors, led them to believe that Maude had made a will leaving her property to Elim and that it was Maude's present testament. The representations by Cunninghams misled the visitors and caused them to abandon their plan to prevail upon Maude to leave her property to Elim.
Turning first to the cause of action based upon estoppel, contestants do not cite any authority in support of their novel ground for contesting the validity of a will other than section 1962, subdivision 3, of the Code of Civil Procedure which provides: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."
[2] The only issue in a will contest is the validity of the will, the grounds of contest being specified in section 371 of the Probate Code. The proceeding being purely statutory, a will may be contested only upon the grounds authorized by the statute. (Estate of Sankey, 199 Cal. 391, 403 [249 P. 517]; Estate of Miller, 212 Cal. App.2d 284, 297 [27 Cal. Rptr. 909].) In Estate of Sankey, supra, at page 403, the court stated: "A will may be contested, or the probate thereof revoked, only upon the grounds authorized by statute. The proceeding is purely statutory, in rem, and binds the world as to the res involved. (Estate of Baker, 170 Cal. 578, 585 [150 P. 989]; Estate of Allen, 176 Cal. 632 [169 P. 364]; Estate of Relph, 192 Cal. 451, 458 [221 P. 361].) The grounds for contest are specified in section 1312, Code of Civil Procedure *582 [now section 311, Probate Code], as follows: `1. The competency of the decedent at the time of the execution of the will and testament; 2. The freedom of the decedent at the time of the execution of the will from duress, menace, fraud, or undue influence; 3. The due execution and attestation of the will by the decedent or the subscribing witnesses; 4. Any other questions substantially affecting the validity of the will.'"
The instant action is not an equitable proceeding to impress a constructive trust on the property devised to the Cunninghams. Nor is there any suggestion or evidence that Maude devised the property to the Cunninghams on their promise to hold it in trust for the contestants. (Sears v. Rule, 27 Cal.2d 131 [163 P.2d 443]; Weinstein v. Moers, 207 Cal. 534 [279 P. 444]; Prior v. Andrews, 83 Cal. App. 782 [257 P. 560].)
[3] Apart from the fact that estoppel is not, as a matter of law, a ground for a will contest, the evidence fails to disclose all of the essential elements necessary to invoke the doctrine. [4] "`In general, four things are essential to the application of the doctrine of equitable estoppel: first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury.'" (Safway Steel Products, Inc. v. Lefever, 117 Cal. App.2d 489, 491 [256 P.2d 32]; Johnson v. Johnson, 179 Cal. App.2d 326, 330 [3 Cal. Rptr. 575]; Transport Clearings-Bay Area v. Simmonds, 226 Cal. App.2d 405, 427 [38 Cal. Rptr. 116].)
[5a] Contestants fail to show any detriment to them. There is no evidence the Maude could have been induced to make a new will in their favor. Moreover, estoppel in this case arises, if at all, by the silence of the Cunninghams regarding the existence of the subsequent will which left Elim Missionary Assemblies out. [6] Silence gives rise to estoppel only where there is a duty to speak. (Bruce v. Jefferson Union High Sch. Dist., 210 Cal. App.2d 632, 634 [26 Cal. Rptr. 762].) [7] The party invoking estoppel has the burden of showing that it was the duty of the other to speak and that he not only has been induced to act by reason of the other's silence, but that the other had reasonable cause to believe that he would so act. (Transport Clearings-Bay Area v. Simmonds, supra, *583 226 Cal. App.2d 405; Newhall v. Hatch, 134 Cal. 269 [66 P. 266, 55 L.R.A. 673].) In Merry v. Garibaldi, 48 Cal. App.2d 397 [119 P.2d 768] at page 401, the court stated: "An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests, has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent." [5b] It cannot be said that the Cunninghams had a duty to disclose to Elim's representatives the existence of the subsequent will in the Cunningham's favor. Nor were the Cunninghams bound to anticipate that the visitors, had they been told of the subsequent will, would have exerted their influence on Maude to induce her to revoke the second will or that she would have done so under their persuasion.
The trial court properly granted a nonsuit on the estoppel cause of action.
On the undue influence issue, contestants complain that the court erroneously excluded certain declarations purportedly made by Maude and by Mr. Cunningham.
[8a] Contestants offered to prove through the testimony of Rev. Bryan that several months after the execution of the Cunningham will, Maude had told Bryan that Cunningham had had a religious revelation in her presence in which he was told to handle her business affairs and that thereupon Maude realized he was a Christian man and could be trusted. The event to which Maude allegedly referred occurred sometime prior to the execution of the will. The trial court excluded the evidence as hearsay.
Insofar as the testimony was offered to prove that Mr. Cunningham had a religious experience in the presence of Maude and with it any inference that could be drawn that such experience was feigned to gain Maude's confidence, it was hearsay and properly excluded. (Estate of Anderson, 185 Cal. 700, 718 [198 P. 407]; Estate of Jones, 166 Cal. 108, 117 [135 P. 288]; Estate of Moore, 143 Cal. App.2d 64, 73-74 [300 P.2d 110].) The truth of such declarations rests on the veracity of the utterer without the opportunity for the declarant to explain or to be subjected to cross-examination. (Estate of Moore, supra, 143 Cal. App.2d at p. 73; Estate of Calkins, 112 Cal. 296, 300 [44 P. 577].)
Contestants argue that the declarations were relevant to the state of mind of the deceased and hence were admissible as an exception to the hearsay rule. [9] Contemporaneous *584 declarations or statements of the testator at the time of the execution of the will are admissible but statements "of the effect that an act or suggestion of another produced upon him at some previous time...." are hearsay and inadmissible. (Estate of Calkins, supra, 112 Cal. 296, 301.) [10] Where the statements are not part of the "res gestae," that is, not contemporaneous with the execution of the will, they are still admissible if made within a reasonable time of the execution of the will, for the limited purpose of showing the then state of mind of the testator and thus, by inference, the state of mind at the time the will was executed. (Estate of Arnold, 147 Cal. 583, 593 [82 P. 252]; Estate of Snowball, 157 Cal. 301, 308 [107 P. 598]; Estate of Ricks, 160 Cal. 467, 485 [117 P. 539].) Nothing in Estate of Sproston, 4 Cal.2d 717 [52 P.2d 924], cited by appellants, conflicts with this rule. [8b] The declarations which contestants sought to introduce in the instant case, if relevant to decedent's state of mind, related to past state of mind and not her state of mind at the time the declarations were made and hence were properly excluded.
[11] Objections to questions propounded to Mr. Cunningham seeking to elicit the same declarations by the decedent were properly sustained for the reasons just stated.
[12] Contestants also complain that the court erroneously struck the testimony of Rev. Bryan that Maude had told him, after the execution of the will, of her prior religious experiences and interests. Those declarations either related to past events or to past state of mind  not state of mind when spoken  and were thus inadmissible. (Estate of Calkins, supra, 112 Cal. 296, 300; Estate of Anderson, supra, 185 Cal. 700, 719.) Furthermore, contestants were permitted to introduce evidence of Maude's religious interests and her past support of foreign missionary work. The exclusion of the offered testimony was thus nonprejudicial.
Contestants further complain of the court's ruling excluding offered testimony by Rev. Bryan that in the conversation with Maude and Mr. Cunningham, he asked Mr. Cunningham if he had a revelation from God, to which Mr. Cunningham allegedly replied, "Anyone can have a religious experience, can't they?" Contestants argue that this constituted an admission on which the jury might have drawn an inference that it was feigned to gain the confidence of the testatrix. The alleged statement by Mr. Cunningham, however, was at best nonresponsive; moreover, there is nothing to show that Mr. *585 Cunningham was under any duty to provide a more responsive answer or denial. [13] An admission for failure to answer arises only where the circumstances call for a reply so that it may be inferred from the nonresponsive answer that the suggestion has been admitted. (Perkins v. West, 122 Cal. App.2d 585, 591 [265 P.2d 538]; Estate of Neilson, 57 Cal.2d 733, 746-747 [22 Cal. Rptr. 1, 371 P.2d 745]; Henshall v. Coburn, 177 Cal. 50, 53 [169 P. 1014]; Wilkins v. Stidger, 22 Cal. 231, 237 [83 Am.Dec. 64].)
[14] Additionally, where there is more than one legatee, the admission of one made out of the presence of the other and tending to show undue influence is inadmissible. (Estate of Dolbeer, 149 Cal. 227, 245-246 [86 P. 695, 9 Ann.Cas. 795]; Estate of Dolbeer, 153 Cal. 652, 662 [96 P. 266, 15 Ann.Cas. 207]; Estate of Purcell, 164 Cal. 300, 311 [128 P. 932]; Estate of Lauth, 180 Cal. App.2d 313, 321 [4 Cal. Rptr. 764].) The reason for the rule is that a will may not be probated as to part and annulled as to part; neither can a testator have the capacity to devise as to one legatee but not to another. (Estate of Dolbeer, supra, 149 Cal. 227, 245.) The cases cited by the contestants (Estate of Lekos, 109 Cal. App.2d 42 [240 P.2d 387]; Estate of Trefren, 86 Cal. App.2d 139 [194 P.2d 574]; Estate of Nutt, 181 Cal. 522 [185 P. 393]) are not to the contrary. The issue in those cases was whether the act of one spouse in actively procuring the execution of a will gave rise to a presumption of undue influence as against the spouse who was named as beneficiary.
Contestants' final argument is that the trial court erred in failing to instruct the jury that a presumption of undue influence existed.
[15] Where a beneficiary in a confidential relationship with the testator actively participates in procuring the execution of the will, and unduly profits by it, a presumption of undue influence arises. (Estate of Graves, 202 Cal. 258, 262 [259 P. 935]; Estate of Garibaldi, 57 Cal.2d 108, 113 [17 Cal. Rptr. 623, 367 P.2d 39]; Estate of Relph, 192 Cal. 451, 465 [221 P. 361]; Estate of Brown, 89 Cal. App.2d 496, 498 [200 P.2d 888].)
[16] The evidence in the instant case was sufficient to show the existence of a confidential relationship between Maude and Mr. Cunningham. The evidence, however, fails to establish the existence of the other elements necessary to give rise to the presumption.
Although there was substantial evidence that Maude's attention *586 had been focused for many years on foreign missionary work, it also appears that Maude had known Mrs. Cunningham since 1928 and that they had developed a close friendship. On occasions Maude referred to Mrs. Cunningham as her "foster" or "adopted" daughter. In these circumstances it cannot be said that the will was unnatural or that the Cunninghams unduly profited by it. (See Estate of Dolbeer, supra, 149 Cal. 227, 232-233.) Nor can it be said that contestants had "any peculiar or superior claim to decedent's bounty." (See Estate of Wright, 219 Cal. App.2d 164, 170-172 [33 Cal. Rptr. 5].) [17] "`Unnatural provisions' are defined as those which prefer strangers in blood to the natural objects of the testator's bounty." (Estate of Ventura, 217 Cal. App.2d 50, 60 [31 Cal. Rptr. 490]; Estate of Moore, supra, 143 Cal. App.2d 64, 75-76.)
The evidence also fails to disclose active participation by the Cunninghams in the procurement of the will. [18] The mere existence of opportunity and motive to procure is insufficient to give rise to the presumption. (Estate of Welch, 43 Cal.2d 173, 175 [272 P.2d 512].) [19] Physical presence of the beneficiary at the execution of the will is insufficient. (Estate of Jacobs, 24 Cal. App.2d 649, 652 [76 P.2d 128]; Estate of Bould, 135 Cal. App.2d 260, 275-276 [287 P.2d 8, 289 P.2d 15]; Estate of Lombardi, 128 Cal. App.2d 606 [276 P.2d 67].) Nor does the procurement of a person to witness a will or of an attorney to draw one constitute active participation. (Estate of Fritschi, 60 Cal.2d 367 [33 Cal. Rptr. 264, 384 P.2d 656]; Estate of Llewellyn, 83 Cal. App.2d 534 [189 P.2d 822, 191 P.2d 419]; Estate of Morcel, 162 Cal. 188 [121 P. 733].) There must be activity on the part of a beneficiary in the matter of the actual preparation of the will. (Estate of Fritschi, supra.)
[20] The only evidence surrounding the execution of the will was the testimony of the Cunninghams. They testified that Maude prepared the will without their assistance and that they were not aware of the contents of the will until after it had been executed, witnessed, delivered to them, and opened after they returned to their home. Even if the testimony of the Cunninghams were to be disbelieved, such disbelief does not constitute affirmative evidence of their participation in the procurement of the will. (Estate of Burlew, 146 Cal. App.2d 642, 648-649 [304 P.2d 233]; Estate of Bould, supra, 135 Cal. App.2d 260, 264-265.)
*587 Contestants complain of certain instructions which were requested and refused and certain others which were given on the ground that the overall effect of the court's ruling was to withhold from the jury the existence of a presumption of undue influence. As already indicated, since the facts do not give rise to the presumption, there was no error in the giving or refusing of instructions of which contestants complain.
The judgment is affirmed.
McCabe, P.J., and Kerrigan, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied February 28, 1967. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.
NOTES
[1] Since contestants do not complain of the trial court's disposition of the causes of action based on unsound mind and fraud, those grounds of contest may be deemed abandoned. Where a point is not assigned as error or argued in the brief, it may be deemed to have been waived. (Black Rock Placer Mining Dist. v. Summit Water & Irrigation Co., 56 Cal. App.2d 513 [133 P.2d 58]; David v. Goodman, 89 Cal. App.2d 162, 170 [200 P.2d 568]; Philbrook v. Randall, 195 Cal. 95, 104-105 [231 P.2d 739].)