Filed 8/8/23  Estate of Blackburn CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of LINDA JEAN BLACKBURN, Deceased. | |
| GARY BRACKEN, Petitioner and Appellant, v. CAROL CLAYMAN et al., Contestants and Respondents. | G061044 (Super. Ct. No. 30-2019-01097062) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Aaron W. Heisler, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Alan S. Yockelson for Petitioner and Appellant.

Magee & Adler and Eric R. Adler for Contestant and Respondent Carol Clayman.

Madden, Jones, Cole & Johnson and Montgomery Cole for Contestant and Respondent Patricia Jean Leue.

## INTRODUCTION

Under Probate Code section 6100.5, subdivision (a)[1], a testatrix is not considered mentally competent to make a will if she lacks "sufficient mental capacity to" understand what she is doing, know the scope of her property, or know who her living descendants are. In this case, a disinherited brother of the testatrix brought a contest challenging her mental capacity to make her will. Essentially, he sought to convince the trial court his sister did not know or understand her husband had died. The trial court was not persuaded by the brother's armchair diagnosis, and we affirm its order denying his contest and admitting his sister's will to probate.

## FACTS

Linda and Greg Blackburn were married for over 40 years, and according to many accounts, were metaphorically joined at the hip until Greg's death on June 13, 2019. The two never had any children, and Linda's parents predeceased her.

Linda's sole sibling was appellant Gary Bracken, who would have been her heir if she had died intestate. In recent years, and in June 2019 itself, the two had been involved in an acrimonious dispute in and out of court concerning their mother, Marjorie, and her estate. Given their deteriorating relationship, Linda met with an attorney, Denae Oatey, after Greg's death in order to remove Gary as a beneficiary of her will. The resulting document was executed on June 18, 2019. In it, Linda – in a most peculiar twist – named Greg as her executor and left the residue of her estate to him if he were to survive her . . . even though he had died five days prior. However, the will also named successor executors to replace Greg in the event of his death – Linda's old friend, respondent Carol Clayman, and Linda's cousin, respondent Patricia Jean Leue. Linda also named contingent beneficiaries in place of Greg; of course, Gary was not one of them.

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

Linda herself passed away not long after executing the new will, on or about August 23, 2019. Her successor executors, Carol and Patricia, through their retained counsel, filed a petition in September 2019 to admit the June will to probate. Gary filed a contest of will and objections in October, contending the inclusion of Greg in the June will was prima facie evidence of Linda's lack of mental capacity.

The petition for probate and the will contest were tried in one proceeding to the court beginning in May 2021 and ending in late August the same year. On October 18, 2021, the court issued a final statement of decision denying Gary's will contest and approving in part Carol and Patricia's petition for probate. Gary now appeals.

## DISCUSSION

Gary raises four main arguments on appeal. First, by admitting Linda's will to probate, he claims the trial court, contrary to applicable law, annulled only a part of the will: the part purporting to make Greg the executor and primary beneficiary of her estate. Second, Gary feels he established a prima facie case that Linda lacked mental capacity and the trial court should have required Carol and Patricia to rebut that case. Third, he does not think the trial court's findings regarding Linda's mental capacity were supported by substantial evidence. Finally, he finds fault with the trial court for allowing Carol and Patricia to reopen their case in chief to present the testimony of subscribing witnesses regarding the execution of the will. What lies beneath each of these arguments is the fallacy that Linda's inclusion of Greg in her will, and her contemporaneous reticence about his death overall, established that she lacked mental capacity. They did not. Having reached the preceding conclusion, we must reject Gary's arguments.

## I.        Sufficiency of the Evidence on Mental Capacity

In the recent case of *Eyford v. Nord* (2021) 62 Cal.App.5th 112 (*Eyford*), the First District Court of Appeal, Division Three, effectively summarized the will contestant's burden in a case such as this: "Section 6100.5(a)(2) provides that '[a]n individual is not mentally competent to make a will if, at the time of making the will, . . .

3

[¶] . . . [¶] . . . [t]he individual suffers from a mental health disorder with symptoms including delusions or hallucinations, which delusions or hallucinations result in the individual's devising property in a way that, except for the existence of the delusions or hallucinations, the individual would not have done.' [¶] In this context, a delusion 'has been defined to be the conception of a disordered mind which imagines facts to exist of which there is no evidence and the belief in which is adhered to against all evidence and argument to the contrary, and which cannot be accounted for on any reasonable hypothesis. "One cannot be said to act under an insane delusion if his condition of mind results from a belief or inference, however irrational or unfounded, drawn from facts which are shown to exist."' (*Estate of Putnam* (1934) 1 Cal.2d 162, 172.) 'If there is any evidence, however slight or inconclusive, which might have a tendency to create a belief, such belief is not a delusion.' (*Estate of Alegria* (1948) 87 Cal.App.2d 645, 655.) [¶] 'Capricious and arbitrary likes, dislikes and mistrusts are not evidence of unsoundness of mind.' (*Ibid*.) 'Care must be taken to differentiate between mere unreasonable opinions and mental derangements. Testamentary capacity does not depend upon the testatrix' ability to reason logically or upon her freedom from prejudice. A belief may be illogical or preposterous, but it is not, therefore, evidence of insanity.' (*Estate of Perkins* (1925) 195 Cal. 699, 708 (*Perkins*).) [¶] 'The presumption is always that a person is sane, and the burden is always upon the contestants of the will to show affirmatively, and by a preponderance of the evidence, that the testatrix was of unsound mind at the time of the execution of the will.' (*Perkins*, *supra*, 195 Cal. at p. 703.) '[T]he standard for testamentary capacity is exceptionally low.' (*In re Marriage of Greenway* (2013) 217 Cal.App.4th 628, 642.) 'A person challenging the validity of a trust instrument on the grounds that the trustor lacked capacity to execute the document . . . carries the heavy burden of proving such allegations.' (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 545.)" (*Eyford*, *supra*, 62 Cal.App.5th at p. 122.)

4

The evidence presented at trial was not sufficient to meet this heavy burden. First, we do not find the inclusion of Greg in the will to be smoking-gun evidence of Linda's incapacity. Including him does not presuppose a belief on Linda's part that her husband was still alive. Linda did not name Greg as the sole executor or beneficiary of her will. She provided for successor executors and contingent beneficiaries. Was it odd that she referred to him in the present tense? Of course. But Greg had only passed away a few days before she executed the will. It is not surprising she might find it difficult to accept his absence. Grief does not a delusion make. At least not necessarily.

Gary also points to two letters Linda wrote by hand in the weeks following execution of the will. One letter dated June 30, 2019, to Carol and Ralph Clayman is signed on behalf of Greg and Linda and uses the word "we" throughout. The letter laments the couple cannot join the Claymans in Las Vegas due to bronchitis. Carol testified Linda had not told her that Greg had died in June.

The second letter to her aunt and uncle, Caryl and Jerry Block, is dated July 17, 2019. It also uses the pronoun "we" and is signed "Greg and Linda" and provides instructions on how the Blackburns wished their bequest to the Blocks to be apportioned amongst the family.

According to Gary, these letters coupled with Greg's inclusion in the will are "unequivocal" evidence that Linda thought Greg was still alive when she executed the June will and there is no evidence to support "an alternative explanation." We disagree. There was a document, handwritten by Linda, with a date of July 5, 2019, in which Linda states: "Greg passed away to Heaven on June 13, 2019."[2] Why would Linda write such a thing if she thought Greg was still alive?

Perhaps even more compelling to us is the timing of the will. Why, of all times, would Linda have sought to change her estate plan on June 18, 2019? Linda told

[2]     Gary's counsel made numerous objections to admission of this document, but all objections were overruled by the trial court, and the evidentiary rulings below are not being appealed.

5

Ms. Oatey in their initial meeting that she was doing it because she wanted to remove Gary as a beneficiary. Ms. Oatey testified she was unaware during June 2019 meetings with Linda that Greg was actually deceased. But Linda gave her a copy of Greg's will. And Ms. Oatey testified she had no concerns about Linda's capacity.

So Linda moved to disinherit Gary in June 2019. But she and Gary had not spoken since August 2015. They had been involved, as Gary himself testified, in litigation over their mother's estate since October 2016. They had not been on speaking terms for years. What prompted Linda to choose this particular time to take concrete action to exclude Gary as a natural object of her bounty? To us, the only logical explanation was she knew Greg had just died and she was the only one left with testamentary control over the estate she and her husband had.

The fact she might not have been ready to break the news of his passing to the Claymans so soon after his death is not compelling, especially in light of the fact she kept many of the couple's friends in the dark about it. Nor is the fact that in discussing the apportionment of the community estate with her aunt and uncle she would use the plural pronoun to express the desires she and her husband had shared. Thus, we conclude the evidence supports capacity.[3]

Having established that, we can dispose of Gary's other arguments.

---

[3] In this vein, we must also address Gary's concern about the following comment made by the trial court in its statement of decision regarding the expert testimony presented by Carol and Patricia: "Proponents' expert witness offered testimony consistent with and supportive of the court's findings and conclusions. Contestant offered a rebuttal expert who pointed out alleged weaknesses in the Proponents' expert's preparation in forming his opinions. Because the court finds the lay witness testimony and exhibits inadequate to meet Contestant's burden of proving the Decedent's lacked capacity, and Contestant offered no expert evidence in support of his position, the court need not decide whether the Proponents' expert's testimony would be sufficient to establish that the Decedent had the requisite capacity to make and execute the 2019 Will." Gary argues the trial court erred by not weighing his rebuttal expert's opinion against the proponents' expert opinion. We disagree; the trial court was correct to determine the expert testimony was not determinative. Gary had not met his burden to establish *lack* of capacity. His expert rendered no such opinion. Thus, there was no need to consider an expert opinion *supporting* capacity. Of course, had Gary presented an expert to render an opinion on lack of capacity, it would have been a different ballgame, and the trial court clearly recognized this.

6

**II.      Partial Annulment of the Will**

This argument is posited on the well-established principle that a testator lacking in mental capacity to devise one aspect of her will has "no more capacity to do so as to another[.]" (*Estate of Dolbeer* (1906) 149 Cal. 227, 246.)  Consequently, "a will may not be probated as to part and annulled as to part[.]" (*Estate of Straisinger* (1967) 247 Cal.App.2d 574, 585.)  The evidence was insufficient to show lack of mental capacity, so there was no basis to annul the will in whole or in part.

In any event, the trial court did not "annul" any part of the will.  The will was admitted to probate, and it can be administered pursuant to its written provisions for successor executors and contingent beneficiaries.

**III.      The Parties' Respective Burdens and Reopening of the Executors' Case-in-Chief**

Given Gary's failure to meet his burden as to his sister's lack of capacity, we necessarily disagree with his claim that the burden should have shifted to respondents to show capacity.  But we must also address Gary's concerns regarding the trial court's allowance of subscribing witness testimony to prove due execution of the will.

After respondents had completed their case-in-chief, Gary's counsel moved for judgment pursuant to Code of Civil Procedure section 631.8.[4]  Counsel claimed the respondents had failed to carry their burden to show due execution of the will.  Under section 8252, a will's proponents have the burden to show the will was duly executed, and the contestants have the burden to show lack of capacity.  (*Id.*, subd. (a).)  The trial

---

[4]      Subdivision (a) of this provision states in pertinent part as follows: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment.  The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence.  The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party."

court agreed but noted due execution was never raised in pretrial briefing as a controverted issue. The parties had stipulated that Linda had signed the will. Therefore, the court allowed respondents to re-open their case-in-chief to call Ms. Oatey and Laura Busch, an employee at Ms. Oatey's firm, as witnesses to testify as to Linda's execution of the will. On appeal, Gary contends this was an abuse of discretion. He is wrong.

A trial court always has the power to control its processes "so as to make them conform to law and justice." (See Code Civ. Proc., § 128, subd. (a)(8).) At the very beginning of trial, the trial court indicated the matter of the will contest would be heard first, followed by the petition for probate. During initial procedural discussions, the court asked whether there was any dispute that Gary had the burden and would present his evidence first. Gary's counsel pointed out that respondents would have the burden of proof on their own petition, but his understanding was the court was going to defer on the probate petition until after the will contest was decided. He sought clarification on what the court planned to do. This was the court's response:

"THE COURT: My thinking was this, but I am open to any discussion that you all would like to have on it. My understanding is that the only objection to the petition for probate is the will challenge. So in the event that the court hears all of the evidence on the will contest, for which, I believe, the contestant bears the burden. [¶] If the court denies the will contest, then it would seem appropriate as part of that denial to then approve the petition for probate of that will. In the event that the court finds the contestant has met his burden, and I grant the will contest, then I suspect there may be further amendment or proceedings that would be necessary before a petition for appointment of a personal representative could be concluded." Gary's counsel agreed with this approach, and never expressed any expectation that respondents would need to produce witnesses to show due execution of the will.

Indeed, in the parties' joint trial statement, the authenticity of the will and Linda's signing of it were both stipulated facts. Thus, respondents were rightly under the

8

impression that due execution was a stipulated issue.  But once Gary's counsel made his motion for judgment after the close of respondents' case, they realized he was not stipulating the issue.  It was only fair for the trial court to give them an opportunity to present the necessary witnesses rather than enter judgment on what it called a "hyper-technicality."  We think this a commendable approach for the trial court to take.

## DISPOSITION

The judgment is affirmed in all respects.  Respondents to recover their costs on appeal.



BEDSWORTH, J.

WE CONCUR:


O'LEARY, P.J.


GOETHALS, J.

9